Argued March 9, affirmed June 8, rehearing granted July 27, re-argued September 20, 1920, former opinion sustained January 25, 1921.

## RORVIK *v.* NORTH PAC. LUMBER CO.

(190 Pac. 331; 195 Pac. 163.)

**Negligence—Personal Injuries—Shipping—Employers' Liability Act.**

1. The captain of a steamship company's vessel, who was injured through the negligence of the employees of a lumber company while standing on its wharf at a place where his duties of superintending

1. Maritime employees as within purview of Workmen's Compensation Act, see notes in **Ann. Cas.** 1916B, 88; **Ann. Cas.** 1918B, 661; **L. R. A.** 1916A, 120.

the receiving and stowing away of lumber required him to be, sustained such relation to the lumber company as brought him within the protection of the Employers' Liability Act.

### Pleading—Failure to Allege Work of Decedent Involved Risk—Sufficient After Verdict—Employers' Liability Act.

2.  In an action under the Employers' Liability Act for the death of the captain of a vessel who was killed when the same was being loaded with lumber at defendant shipper's wharf, the complaint after verdict *held* sufficient to bring the case within the Employers' Liability Act, despite objection that it was not averred that the work decedent was engaged in at the time of the injury involved a risk or danger.

### Negligence—Hazardous Occupation—Question for Jury—Employers' Liability Act.

3.  In an action for the death of the captain of a vessel killed while superintending the loading of the vessel with lumber at defendant shipper's wharf, whether his work involved a risk or danger, so as to bring him within the Employers' Liability Act, *held*, under the evidence, a question for the jury.

### Assignments—A Tort Action cannot be Assigned.

4.  A tort action cannot be assigned.

### Master and Servant—Subrogation—Foreign Compensation Act—Law of Forum.

5.  The provision of Workmen's Compensation Act of California for subrogation to the rights of the injured employee will not be enforced in Oregon, as, under the law of that state, a tort action is not assignable; and hence the fact that the widow of the captain of a vessel, killed at defendants' wharf, presented a claim under the California act against the owner of the vessel, a California corporation, the deceased being a resident of that state, will not preclude the widow's recovery against defendants on the theory the owners of the vessel were subrogated to her rights against defendants.

### Master and Servant—Death of Employee—Domiciled in Sister State —Subrogation.

6.  As Workmen's Compensation Act of California does not profess to make full compensation for injury, but limits the amount in case of death to $5,000, the fact that the widow of the captain of a vessel killed while superintending loading lumber at defendant's wharf presented a claim against the owner of the vessel, a California corporation, will not, where the owner fails to sue defendant, preclude the widow from suing defendant in Oregon to recover full compensation for the injury.

### Judgment—Remittitur—Not Filed not Entitled to Full Faith and Credit.

7.  Where the Supreme Court of California, to which an award under the Workmen's Compensation Act was ultimately appealed,

---

4.  On assignability of cause of action for death, see note in 45 L. R. A. (N. S.) 1098.

had not filed any *remittitur*, the decision cannot be treated as a judgment of a foreign state entitled to full faith and credit.

### Trial—Instruction on Duty of Master—Employers' Liability Act.

8. In an action for the death of a captain of a vessel killed while superintending loading lumber at defendant's wharf, an instruction that if the work defendant was doing involved a public risk or danger, and decedent was a member of the public, rightfully on the premises when injured, and that defendant failed to use care which it might have used, cannot, in view of a clear explanation given in another instruction, be deemed misleading, under the Employers' Liability Act, where there was no question as to the right of decedent to be at the place he was.

### Death—Measure of Damages—Employers' Liability Act—Instruction Approved.

9. In a widow's action under the Employers' Liability Act for death, an instruction that she was entitled to recover an amount equal to the pecuniary loss resulting to her, and that the value of her husband's life was the net amount which he would have saved from his earnings, taking into consideration his habits and expenditures, is correct.

### ON REHEARING.

### Trial—Charge Viewed as a Whole.

10. In testing the correctness of the instructions to the jury, the charge must be viewed as a whole.

### Admiralty—Maritime Nature of Tort Depends on Locality of Act.

11. Whether a tort is a maritime tort is determined by the locality of the act, and the fact that one is injured while performing a maritime contract does not necessarily determine the character of the tort.

### Admiralty—Death of Person Knocked from Wharf Held not Maritime Tort as Matter of Law.

12. Where a person was knocked from a wharf by the movement of a pile of lumber and struck upon logs and timbers in the river, and there was no attempt to show that his death was the immediate result of striking the logs, and not the immediate result of being struck by the lumber on the wharf, it could not be said as a matter of law that the tort was a maritime one so as to prevent a recovery under the Employers' Liability Act or the Workmen's Compensation Act of California.

### Abatement and Revival—Pendency of Workman's Compensation Proceeding in Another State not Ground for Abatement as Matter of Right.

13. A defendant sued for death was not entitled to an abatement of the action as a matter of right because of the pendency of a workman's compensation proceeding in another state, even assuming that such proceeding was an action, and that there was the necessary identity of parties, issues, causes of action, and relief

---

11. On admiralty jurisdiction in tort, see notes in 13 Ann. Cas. 1216; 42 L. R. A. (N. S.) 640.

sought, though the court in its discretion might postpone the action until the decision in the first action.

**Abatement and Revival—Refusal to Postpone Action Because of Pendency of Proceeding in Another State Held not Abuse of Discretion.**

14. In an action against a third person for the death of an employee, it was not an abuse of discretion to refuse to postpone the action until after a decision in a proceeding pending in another state against the employer for compensation for the death.

**Assignments—Survivorship is Test of Assignability.**

15. Survivorship is the test of assignability of a claim for tort.

**Assignments—Claim for Injuries to Property, but not to Person, may be Assigned.**

16. Any claim which affects the estate of a party, though arising out of tort, may be assigned, but not a claim for an injury to the person.

**Assignments—Litigious Right not Assignable but Property Assignable Though Recoverable Only by Litigation.**

17. An assignment of a mere litigious right is invalid, but an assignment of property is valid, though the property be incapable of being recovered without litigation.

**Assignments—Right of Action for Death not Assignable.**

18. A widow's right of action under the Employers' Liability Act for the death of her husband is not assignable.

**Master and Servant—Under California Compensation Act Claimant may Sue Third Person and Join Employer as Defendant.**

19. Under Workmen's Compensation Act of California, Section 31, providing that the making of a lawful claim shall operate as an assignment to the employer of any right of action against a third person, but that any amount collected by the employer in excess of the amount paid by him shall be held for the benefit of the claimant, assuming that such assignment will be enforced in Oregon, the case is one of an indivisible right of action owned by two persons, and under the rule now prevailing the employee may sue, and, in case of the employer's failure to join as plaintiff, make him a defendant.

**Parties—Defendant Waived Defect of Parties by Making no Objection.**

20. If, under Workmen's Compensation Act of California, Section 31, an employer against whom a claim for compensation had been made had an interest in the claimant's right of action against a third person, defendant waived the failure to make the employer a party by not objecting to the omission.

**Master and Servant—Employer Resisting Compensation Claim and Denying Interest in Right of Action Against Wrongdoer cannot Sue.**

21. Where an employer against whom a claim for compensation was made under the Workmen's Compensation Act of California has

contested the claim and persistently denied that it had any interest in the claimant's right of action against a third party and has attempted to transfer any interest it may have to the claimant, it cannot bring another action against such third party and recover a judgment for damages.

From Multnomah: Robert Tucker, Judge.

Department 2.

This is an action brought under the Oregon Employers' Liability Act (Laws 1911, p. 16) for damages for the death of C. P. Rorvik.

The plaintiff is the widow of deceased. The defendant corporation is extensively engaged in the business of manufacturing and dealing in lumber in the City of Portland, and maintains on its premises, and adjoining the Willamette River, a dock, upon which it stores its lumber for sale, and from which the lumber is transferred to vessels for shipment to ports on the Pacific and elsewhere.

At the time of the accident the corporation was in the hands of a receiver, one Henry P. Dutton, but he subsequently resigned and Sargent, Hawkins and Bradley were appointed in his place, and as such are made defendants.

The particular situation at the time of the accident is described in the complaint as follows:

"That on the third day of August, 1916, the said Henry P. Dutton, as receiver, was conducting said business as aforesaid, and was engaged through his servants and employees, in hauling a quantity of lumber to the said wharf of the defendant company, and placing said lumber upon the said wharf in reach of ship's tackle alongside said wharf, so that the same could be loaded upon the steamship 'Klamath,' which was docked at said wharf; that said lumber was placed upon the cars of the said defendant company hereinbefore described, which cars were drawn by a horse, a rope or chain being attached to the rear of

said cars extending forward alongside of said cars, to which the horse was hitched, the horse in drawing the same passing alongside of the said track and the cars running thereon; that on the said third day of August, 1916, the said C. P. Rorvik was employed by the owner of the said steamship 'Klamath,' and was in charge of the said steamship, and engaged in loading the same at the said wharf of the defendant company with the lumber which was being placed by the said receiver upon the said wharf in reach of the ship's tackle; that at the place where the said steamship was being loaded and the place where the said lumber was being placed upon the wharf by the said receiver the said defendant company and its said receiver maintained several of its said railway tracks, which ran across said wharf at right angles to the water's edge and to the edge of the dock; the floor of said wharf was about eighteen (18) feet from the level of the river; that the said receiver on the said third day of August, 1916, or shortly prior thereto, had placed alongside of one of said tracks on said wharf a pile of lumber, said lumber being piled parallel with the said track and to a point within approximately thirty inches of the edge of the said wharf next to the water line; that on the said date last mentioned said C. P. Rorvik, while in the discharge of his duties as captain of the said steamship 'Klamath,' and engaged in the loading of the said steamship as aforesaid, was standing on said wharf adjoining the river, and while the said Rorvik was standing as aforesaid the said receiver caused two of the said cars of the said defendant corporation, heavily loaded with lumber, to be drawn along the said track last mentioned, which paralleled the said pile of lumber behind which the said Rorvik was standing; the said cars were not fastened together and the forward car was being shoved forward by the weight of the rear car at the rear end of which the horse was attached as aforesaid; that the said receiver caused and allowed the said cars to be drawn along said track without providing any brakes or

other contrivance by which the same could be stopped, and to be propelled in such a way that when the horse which was drawing them stopped, the said cars would continue upon their journey until they should stop of their own accord; that the said cars and horse were in charge of only one employee of the said receiver; that the said receiver, by his servants, negligently and carelessly piled the said lumber so near to the said track and placed the lumber upon the said cars in such a position that when the forward end of the said forward car reached a point on the said track opposite to the said pile of lumber upon the said wharf, a portion of the lumber upon the said forward car violently and with great force struck a portion of the said lumber piled upon the wharf, and shoved it forward, causing it to strike the said C. P. Rorvik, by reason of which he was knocked off the said wharf, receiving therefrom mortal injuries, from the effects of which he died on August 8, 1916.''

The acts and omissions of defendants which the complaint sets forth as the cause of the accident are stated as follows:

"That the said injuries to the said C. P. Rorvik were caused not through any negligence or lack of care on the part of the said Rorvik, but solely through the carelessness and negligence of the said Henry P. Dutton, as receiver, and his servants and employees, in this: that he negligently and carelessly caused the said cars to be drawn along the said track in such a manner as to strike the lumber piled alongside the said track, and allowed the said cars to be used without devices or appliances with which to keep them under control and stop them, at any given time, quickly and efficaciously; and allowed the said cars to be operated by means of a horse pulling on a rope, or similar contrivance attached to the rear of the said cars in such a manner as to allow the horse to pass along the side of the said track and opposite the said cars and thus draw the cars forward, and without providing any means for stopping the progress of said cars in the event that the horse was stopped; and by

allowing the said forward car to be shoved forward
by the force and weight of the rear car without hav-
ing it attached to the rear car, and without having
any devices or other means for stopping it in the event
that the rear car should be stopped at any time; and
by allowing the said cars to be operated by one man
walking along by the side thereof driving the horse
pulling the same, which necessitated said man being
in such a position behind the said horse and near the
rear of the said cars that it was impossible for him
to see the track ahead of said car, or to see the oppo-
site side of said car, so as to protect persons who
might rightfully be in such positions; and by oper-
ating said car as aforesaid, without formulating, pro-
mulgating, or enforcing any rules or regulations, or
providing any system of communication by means of
signals or otherwise, so as to protect the public from
injury by the said cars as they were being shoved for-
ward in advance of the operator along said track;
and by operating said cars with one man only, in-
stead of providing a sufficient number of men to en-
able the operator to keep a watch ahead of the said
cars, so as to avoid collisions with obstacles upon
or near the track or with persons who might right-
fully be in front of said cars; and by piling the said
lumber alongside the said track in such proximity to
said track that the said loaded cars were unable to
pass the same without striking it; and by loading the
said cars in such a manner as to allow the lumber
placed thereon to strike the said lumber piled along-
side the said track; and by failure to exercise such
care and precaution, which it was entirely practicable
to use, to prevent the car of lumber passing along
said track from striking the said lumber placed along-
side the track.''

There were other allegations showing how the de-
fects and omissions above set forth could have been
remedied without impairing the usefulness of the
agencies used by defendant in loading the vessel.

The answer denied the material allegations of the complaint; pleaded negligence on the part of plaintiff's intestate as the cause of the injury; and, by way of affirmative defense set forth the contents of Chapter 176 of the laws of the State of California for the year 1913, known as the "Workmen's Compensation, Insurance and Safety Act," and certain amendments thereto, adopted in 1915, and designated as Chapters 541, 607 and 662. The plea is too long to be inserted here, but will be further elaborated in the opinion.

It was then alleged that on the twenty-seventh day of October, 1916, plaintiff duly presented her claim to the Industrial Accident Commission, created by this act, against the Klamath Steamship Company, a California corporation and owner of the steamship "Klamath," of which deceased was captain, and being the vessel which was being loaded when the accident occurred, said claim being for compensation to plaintiff for the death of her husband by reason of said accident.

The answer alleged that the Klamath Steamship Company answered said claim, and that thereby issues were made up as required in such cases, and that thereafter a hearing was had, and on the thirtieth day of January, 1917, findings and an award were made in favor of plaintiff and against said steamship company; that thereupon the said company caused the said proceedings to be reviewed upon *certiorari* in the Supreme Court of the State of California, and upon the hearing there the findings and award of the Industrial Accident Commission were in all things upheld and sustained, and are in full force and effect; that by virtue of the laws of California the liability for compensation provided by said Workmen's Com-

pensation Act was in lieu of any other liability whatever to any person, and that the making of a lawful claim under said act operated as an assignment to the employer of any right to recover damages which the injured employee, his representatives or dependents, had against any other party for such death, and the employer was thereby subrogated to the rights of such party, and that by the making of such claim against an employer before the Industrial Accident Commission such claimant surrendered up and canceled his right to make any claim against any other person on account of the death of such employee; that decedent was injured and died in Portland, Oregon; that at the time of his death both he and the Klamath Steamship Company were residents of the State of California, and that his contract of employment was made in the State of California.

Plaintiff replied, putting in issue all the new matter alleged in the answer, except that by affirmative allegations she admitted the proceedings before the Industrial Accident Commission, the affirmance of its proceedings before the Supreme Court, but alleged that upon the petition for *certiorari* the proceedings upon the award were stayed during the pendency of the review; that the laws of California provide that a litigant shall have 90 days from the rendition of a decision by the Supreme Court of that state to apply for a writ of error to the Supreme Court of the United States, and plaintiff alleges upon information and belief, that the Klamath Steamship Company will apply for said writ; that the award of the Accident Commission is still stayed, and that plaintiff is not entitled to recover thereon or have the same made effective.

Plaintiff filed a supplemental complaint, setting up the proceedings before the Industrial Accident Com-

mission and the Supreme Court, and alleging that since the filing of her complaint, and since the decision of the Supreme Court of California, the Klamath Steamship Company had finally and in writing reassigned any claim which it had by reason of the subrogation claimed in defendants' answer to plaintiff, and that by virtue of such assignment, plaintiff is now the owner of any claim which said company may have had. against defendants.

The supplemental complaint being. put in issue by an appropriate answer and reply thereto, the cause came to trial, wherein plaintiff had a verdict and judgment for $12,500, from which defendants appeal. The alleged errors are set forth in the opinion.

AFFIRMED.

For appellants there was a brief over the names of *Messrs. Emmons & Webster* and *Messrs. Wilbur, Spencer, Beckett & Howell,* with an oral argument by *Mr. S. C. Spencer.*

For respondent there was a brief over the names of *Mr. Ira S. Lillick* and *Messrs. Angell & Fisher,* with an oral argument by *Mr. Homer D. Angell.*

McBRIDE, C. J.—This case presents many intricate propositions, and for that reason we have given a more than usually.extended statement of the contentions of the parties as they appear from the pleadings.

1. It is first contended that plaintiff cannot recover under the employers' liability law of this state, because neither the complaint nor the evidence show that the deceased was an employee of defendant, or that he sustained to it any such relation as brings him within the terms of such act. The complaint and

the uncontradicted testimony disclose the following facts:

The evidence indicates that at the time the accident occurred the deceased was captain of the steamship "Klamath," and an employee of the Klamath Steamship Company, a California company, and that the ship, at the time of the accident, was taking on a load of timber being shipped by defendants; the lumber was being delivered entirely by the employees of the receiver. Neither the decedent nor any employee of the steamship "Klamath" had any part therein. But the employees of the Klamath Steamship Company were obliged to be about the work carried on by the receivers in order to receive the lumber as it was delivered by the receivers. The two sets of employees in their work intermingled. The contract of sale provided that the lumber should be placed on the wharf within reach of the ship's tackle by the seller. When the lumber was delivered and placed in reach of the ship's tackle by the receivers, the duties of the employees of the steamship began, namely, to load the lumber on the ship.. The employees of the steamship took up the work where the receivers stopped. In fact, as the cars loaded with lumber were placed on the wharf in reach of the ship's tackle, the servants of the steamship would, by means of the slings and tackle, remove the lumber from the cars into the hold of the ship. The employees of the receivers and the employees of the steamship, including the steamship's employee, the decedent, thus met on common ground, and both, by the necessities of their duties, were obliged to work on the wharf, on and about the tracks, and around the machinery where the operations were being carried on.

The only evidence introduced tended to show that deceased was standing on the edge of the wharf in a

place where the convenient and proper execution of his duties required him to be, and there is nothing to indicate that he was negligent in any particular, or that any other place would have been safer, consistently with the performance of those duties. In other words, as the employee of the Klamath Steamship Company he was in the place where his duties required him, engaged in the labor of receiving and stowing away or superintending the receiving and stowing away, of the lumber brought to the edge of defendants' wharf, and in reach of the tackle of the steamship company.

In view of the able and exhaustive analysis of our Employers' Liability Act by Mr. Justice HARRIS, in *Turnidge* v. *Thompson,* 89 Or. 637 (175 Pac. 281), which covers every phase of the question as to the persons who are within or without the act, we deem any attempt at further analysis or distinction unnecessary. From the lucid interpretation in that case and in other cases hereafter mentioned, we deduce the rule that the Employers' Liability Act does not extend to the protection of the general public as such, but that it does extend its protection to employees of the particular person owning or operating dangerous machinery or engaged in hazardous employments, and to other persons or employees of other corporations whose lawful duties require them to be or work about such machinery, or expose themselves to the hazards of the machinery or appliances in use by the owner thereof.

Such, when considered with reference to the case then in hand, was the holding in *Clayton* v. *Enterprise Electric Co.,* 82 Or. 149 (161 Pac. 411), which, with the limitation given above, is approved in *Turnidge* v. *Thompson,* 89 Or. 637 (175 Pac. 281). See,

also, *Morgan* v. *Bross,* 64 Or. 63 (129 Pac. 118);
*Cauldwell* v. *Bingham & Shelly Co.,* 84 Or. 257 (155
Pac. 190, 163 Pac. 827).

From these authorities we conclude that if the
other elements authorizing recovery are present, the
deceased was a member of that class on behalf of
which a recovery is authorized by the act.

2, 3. It is urged that "plaintiff does not allege or
prove that the work decedent was engaged in at the
time he was injured involved a risk or danger, and
therefore she cannot maintain this action." While
the complaint is not so definite in this respect as the
rules of good pleading would seem to require, yet,
taken as a whole, we think it is sufficient. After
stating in detail the business the receivers were en-
gaged in, including the operation of railway tracks
and machines for transporting the lumber from the
mill to the wharf, and stating that such transporta-
tion was by means of cars placed upon said tracks
and drawn by horses, one paragraph of the complaint
states that "such business was a work involving risk
and danger to the public."

The paragraphs quoted in the statement give in
great detail the manner in which the work of loading
was carried on; point out its defects and omissions,
and how they might have been remedied or avoided;
and the abstract shows no demurrer or objection to
the pleading before trial, and the case was tried
apparently upon the theory that it was sufficient. Un-
der the circumstances we think the pleading was suffi-
cient. This being the case, the question as to whether
the work was hazardous or in fact involved risk or
danger, became a question for the jury: *Wolsiffer* v.
*Bechill,* 76 Or. 516 (146 Pac. 513, 149 Pac. 533);
*Yovovich* v. *Falls City Lbr. Co.,* 76 Or. 585 (149 Pac.

941). There was evidence from which the jury had a right to infer that the work was hazardous, especially in the manner and with the appliances with which it was prosecuted. ˙

4, 5. The next assignment of error is based upon the failure of the court to grant plaintiff's motion for a nonsuit and directed verdict, and for judgment on the pleadings based upon the assumption that by presenting a claim against the Klamath Steamship Company for indemnity for her husband's death, under what is known as the Workmen's Compensation, Insurance & Safety Act, plaintiff divested herself of any right to bring an action against the defendants under our employers' liability law.

Those sections of the California act which are supposed to bear upon this contention are found in Chapter 176 of the statutes of California for 1913, as amended by Chapters 541, 607 and 662, Laws of 1915, and are as follows:

"Sec. 12. (a) Liability for the compensation provided by this act, in lieu of any other liability whatsoever to any person, shall, without regard to negligence, exist against an employer for any personal injury sustained by his employees arising out of and in the course of the employment and for the death of any such employee if the injury shall proximately cause death in those cases where the following conditions of compensation concur: * *

"Sec. 73. (a) All proceedings for the recovery of compensation, or concerning any right or liability arising out of or incidental thereto, or for the enforcement against the employer or an insurance carrier of any liability for compensation imposed upon him by this act in favor of the injured employee, his dependents or any third person, or for the determination of any question as to the distribution of compensation among dependents or other persons or for the determination of any question as to who are de-

pendents of any deceased employee, or what persons are entitled to any benefit under the compensation provisions of this act, or for obtaining any order which by this act the commission is authorized to make, shall be instituted before the commission, and not elsewhere, except as otherwise in this act provided, and the commission is hereby vested with full power, authority and jurisdiction to try and finally determine all such matters, subject only to the review by the courts in this act specified and in the manner and within the time in this act provided.

"75a.   The commission shall have jurisdiction over all controversies arising out of injuries suffered without the territorial limits of this state in those cases where the injured employee is a resident of this state at the time of the injury and the contract of hire was made in this state, and any such employee or his dependents shall be entitled to the compensation or death benefits provided by this act.

"Sec. 31.   The making of a lawful claim against an employer for compensation under this act for the injury or death of his employee, shall operate as an assignment to the employer of any right to recover damages which the injured employee, or his personal representative, or other person, may have against any other party for such injury or death, and such employer shall be subrogated to any such right and may enforce in his own name the legal liability of such other party.   The amount of compensation paid by the employer or the amount of compensation to which the injured employee or his dependents is entitled shall not be admissible in evidence in any action brought to recover damages, but any amount collected by the employer, under the provisions of this section, in excess of the amount paid by the employer, or for which he is liable, shall be held by him for the benefit of the injured employee or other person entitled."

Whether or not the legislative authority of the State of California extends to providing for compensation for an injury inflicted by one citizen of that

state upon another citizen, even when the injury occurs outside the territorial limits of the state, need not be discussed or questioned. Neither is it necessary to discuss the effect of such an assignment or subrogation by operation of law, as is provided for in the section last quoted, where the cause of action to which the subrogation is intended to apply arose or is suable in the state.

But in this case a different question arises. The accident and death occurred in this state, and the defendants are receivers of a corporation located in this state. As a corporation resident in this state is suable here only, they are in fact sued here. In this state a right of action for tort is not assignable. Plaintiff, who was a resident of California, could not have gone to California and made an assignment of an interest in her claim for damages against defendants to a resident of that state, or to the Klamath Steamship Company, which could have authorized it to bring an action in our courts to recover damages for the death of Captain Rorvik. Such an action would be contrary to the policy of our laws and against the decisions of our courts. While courts, as a matter of comity, will usually enforce a right arising out of a statute of another state, they will not do so where the statute infringes upon the law of the forum: 5 R. C. L., § 8, and cases there cited.

It is conceived that the statute of California can give the Klamath Steamship Company no higher or greater right than it could have obtained by private contract with plaintiff, and that could never have gone to the extent of authorizing it to sue in its own name in our courts on account of a tort committed to the damage of plaintiff. It may also be noticed that plaintiff is not divested by the California statute of

all interest in her claim, but the employer is only allowed to retain an amount sufficient to reimburse itself for the amount which it has paid, or is liable to pay, as compensation, and is required to pay the overplus, if any, to plaintiff.

6. The California act does not profess to make full compensation for the injury, but limits the amount to be allowed to the sum of $5,000. Between the employer and employee this sum is the limit of the recovery, but this fact does not bar a recovery against the actual wrongdoer to the full extent of the injury suffered. With such an interest in the case we are of the opinion that plaintiff would, in any event, be entitled to sue in her own name in our courts in case the Klamath Steamship Company should fail to do so, even if we gave, which we do not, full effect to the subrogation provided for by the California statute.

The views above expressed render unnecessary any discussion as to the sufficiency of the supplemental complaint filed by plaintiff, or the validity of the evidence offered in support of it. Neither is it necessary to discuss the validity of plaintiff's claim against the Klamath Steamship Company beyond saying that, in view of the decision of the Supreme Court of the United States in the case of *Southern Pac. Co.* v. *Jensen,* 244 U. S. 205 (61 L. Ed. 1086, Ann. Cas. 1917E, 900, L. R. A. 1918C, 451, 37 Sup. Ct. Rep. 524, see, also, Rose's U. S. Notes), it seems clear that the Industrial Accident Commission of California had no jurisdiction to entertain plaintiff's claim against the steamship company, and that if that company has failed to prosecute an appeal to the Supreme Court of the United States, or has lost that privilege by sleeping upon its rights, it has been guilty of such laches

as would probably preclude it from recovering from these defendants.

Since the original draft of this opinion was prepared, we have received the advance sheets containing the opinion of the United States Supreme Court in the case of *Knickerbocker Ice Co.,* Plaintiff in Error, v. *Lillian E. Stewart,* Defendant, 253 U. S. 149 (64 L. Ed. 834, 40 Sup. Ct. Rep. 438), decided May 17, 1920, in which it is held that even Congress cannot constitutionally authorize a state Industrial Accident Commission to take cognizance of marine torts; thus settling the question in accordance with the views above expressed.

7. It may be added that there is no evidence that there has ever been any *remittitur* from the Supreme Court of California to the lower court in the matter, or any proceeding taken which establishes the decision of the California Supreme Court as a final judgment so as to bring it within the "full faith and credit" clause of the Constitution.

In any case these defendants are not liable to be harrassed by another action after the present suit is disposed of. Beyond that contingency it is a matter of no consequence to defendants whether the action is brought by plaintiff or by the steamship company.

It will be noticed that the alleged award by the California Industrial Accident Commission is not pleaded by way of mitigation or reduction of damages; but as a bar to this action. As such it is ineffective. Defendant's motions for abatement, nonsuit, and directed verdict were, therefore, properly overruled.

8. Defendants except to the giving of the following instruction:

"If you find from a preponderance of the evidence that the work that the receiver was doing was one involving a risk or danger to the public and that the decedent was a member of the public and rightfully upon the premises where and when he was injured, and that the receiver failed to use any one or more of such devices, care and precaution which it was practicable to use for the protection and safety of life and limb, and that such failure was in one or more of the particulars as alleged by the plaintiff, and that by the use thereof the efficiency of the structure, machine, or other apparatus or device said receiver was using would have been preserved, and that by reason of such failure, the same being the proximate cause of the accident, that the decedent received the injuries which caused his death, in that event the plaintiff would be entitled to recover."

The argument in support of appellants' contention is stated as follows:

"Whatever duty the defendants owed Captain Rorvik was not a duty they owed to him as a member of the public. Captain Rorvik docked the steamship 'Klamath' at our dock for the purpose of loading it with lumber we had sold to be loaded on that steamship, and thereby there arose certain legal duties that the defendant owed to the deceased, but all those legal duties were and are well defined by laws other than the duties laid down by our Employers' Liability Act. The act did not add to or take away any of these duties.

"By this instruction the jury were told that the plaintiff could recover if decedent was a member of the public as such, and if the work the receiver was doing was one involving a risk or danger to the public as such, if the decedent was rightfully upon the premises, etc. The vice of this instruction lies in the fact that the Employers' Liability Act does not embrace the public as such, and the instruction states that it does."

The argument proceeds upon the theory that this action is based upon the proposition that deceased was a *mere* member of the public without any duties which required his presence at the place where he was injured, and in contiguity to the machinery and apparatus employed in loading the vessel, whereas the complaint, taken as a whole, and the uncontradicted testimony, show that deceased was necessarily in the position he occupied and engaged with defendants' employees in loading the vessel. It is true that the duties of the deceased and the employees of the steamship company began where the actual physical labor of defendants' employees left off, but no link in the chain was broken; the loading was a continuous work, and could not be otherwise; the lumber was put upon the slings extending from the vessel by defendants' employees, and from that position moved aboard by machinery operated by the employees of the steamship company. The vessel could not be loaded in any other manner, and while deceased was in one sense a "member of the public," in another he was an employee engaged in working about or in the vicinity of machinery, found by the jury to be dangerous, which brings the case squarely within the rule announced in *Clayton* v. *Enterprise Electric Co.,* 82 Or. 149 (161 Pac. 411).

If there existed a controversy as to the surroundings or the reason for the decedent's presence on the wharf, or his relation to the subject matter, the instruction objected to might have had a tendency to mislead the jury; but, in view of the evidence actually given, it tended to narrow, rather than extend, the limit of defendants' liability.

In a subsequent instruction Judge Tucker explained what he meant by the term, "a member of the public," in the following language:

"In this connection, I instruct you that if you find the decedent, at the time he received the alleged injuries, was upon the wharf of the North Pacific Lumber Company, defendant, and was in charge of the loading of the steamship 'Klamath,' either upon the express or implied invitation of the receiver, and that as captain of the said steamship his duties in respect thereto required that he be upon the wharf, that in that event he was a member of the public, and as such was entitled to whatever protection the law provides for the public. Or if you find that the decedent was in charge of the loading of the vessel, and that the vessel was being loaded at the said wharf at the express or implied invitation of the receiver, that by reason thereof the decedent was entitled to go upon the wharf if it was reasonably necessary for him so to do in order to superintend the loading of the vessel, and while upon the wharf under such conditions, he was a member of the public, he was, as a matter of law, rightfully upon the wharf.

"The defendants in their answer claim, in effect, that it was not necessary for the decedent, the captain of the ship, in the discharge of any of his duties at the time he was hurt, to stand in front of the pile of lumber which was piled close to the edge of this dock, and that he received the injuries that resulted in his death from his own carelessness and negligence in standing in this narrow place. And if you believe, gentlemen of the jury, from a preponderance of the evidence in this case, that the duties of the captain did not require him to stand in this narrow place, and you further find that it was carelessness and negligence on his part to stand in this place when there were other places upon the dock that he could have stood with safety, and you believe from a preponderance of the evidence that he sustained his injury, which resulted in his death, because of his own carelessness and negligence, and that there was not any negligence on the part of the defendants contributing to the injury, then your verdict should be in favor of the defendants."

In view of this explanation the instruction objected to was not misleading, any tendency in that direction being obviated by the clear explanation given in the succeeding part of the charge last above quoted, which is fairly within the rule announced in *Clayton v. Enterprise Electric Co.*, 82 Or. 149 (161 Pac. 411).

Several other objections to instructions are specified, but they all find their basis in the theory of the nonapplicability of the workmen's compensation law to the circumstances of the case at bar, or to the ruling of the court as to the effect of the claim and award under the provisions of the California Compensation Act. If the writer is wrong in his views as to the force and effect of either of these, then the court below was wrong, and this opinion is not the law. As we view the law, the objections are not well taken.

9. The last objection is to an instruction upon the measure of damages, which is as follows:

"If you find from a preponderance of the evidence that the plaintiff is entitled to recover in this case, it will then become your duty to consider and assess her damages. In determining the amount of the damages, you are instructed that if she is entitled to recover she is entitled to damages equal to the pecuniary loss resulting to her from the death of her husband. The value of the decedent's life is the net amount which the decedent would have saved from his earnings by his skill and bodily labor in his calling during the residue of his life, had he survived, taking into consideration, from the evidence submitted, his age, health, ability, habits of industry and sobriety, and mental and physical skill, so far as they affect his capacity for earning money by rendering service to others or accumulating property. All this must depend upon the evidence that has been produced before you on that subject. The amount of damages, how-

ever, shall not exceed that asked for in the complaint.''

We see nothing wrong in this instruction. The plaintiff was decedent's wife and only heir. Her damages would be an amount equal to the pecuniary loss resulting to her from the death of her husband, and that amount would be such a sum as he probably would have accumulated if he had been permitted to live to the limit of his life expectancy. There is no absolute method of computing the damages in a case of this kind. It would be within the bounds of speculation to imagine that in spite of health conditions and habits, both shown to have been good, there was a possibility that he might die sooner than the life expectancy tables indicated, by some accident on land or sea and incident to his profession, or that his accumulations might be swept away by bad investments, leaving him to die a pauper, or that plaintiff might have died before him, or any one of many possible contingencies. The rule adopted by the court was one more likely to work out justly in practice than any other that can be formulated, and is sanctioned by authority: *McClaugherty* v. *Rogue River Electric Co.,* 73 Or. 135 (140 Pac. 64, 144 Pac. 569).

This has been an exceedingly interesting and difficult case. The facts are scarcely contested, but the questions of law involved are intricate, and their examination has consumed much time and labor; but, after a thorough consideration of them, we feel assured that no mistake has been made to the prejudice of defendants, and the judgment of the lower court will therefore be affirmed.           Affirmed.

Johns, J., concurs.

Bean and Bennett, JJ., concur in result.

99 Or.—6

Former opinion sustained January 25, 1921.

## ON REHEARING.

(195 Pac. 163.)

This appeal was originally presented to one department, but upon the petition of the defendants, receivers, a rehearing was granted, and the appeal was heard by the court sitting *en banc.* The first hearing resulted in an affirmance of the judgment. The reader is referred to the original opinion, reported in 190 Pac. 331, for a statement of the facts.

The defendants contended in their petition for a rehearing, and they especially urged at the second oral argument that:

(1) "It was error to uphold the trial court in instructing the jury that the plaintiff could recover if the work in which defendants were engaged at the time of the injury to and the death of C. P. Rorvik involved a risk or danger to the public.

(2) "It was error to hold that A. Maude Rorvik could recover $5,000 from the Industrial Accident Commission of California and $12,500, from the defendants in this action.

(3) "It was error to hold that the injury and death of Captain C. P. Rorvik was a maritime tort."

FORMER OPINION SUSTAINED ON REHEARING.

On rehearing there was a brief filed over the names of *Messrs. Emmons & Webster* and *Messrs. Wilbur, Spencer, Beckett & Howell, for* appellants, with an oral argument by *Mr. S. C. Spencer.*

For respondent there was a brief filed by *Mr. Ira S. Lillick* and *Messrs. Angell & Fisher,* with an oral argument by *Mr. Homer D. Angell.*

HARRIS, J.—In the original opinion we said:

"We deduce the rule that the Employers' Liability Act does not extend to the protection of the general public as such, but that it does extend its protection to employees of the particular person owning or operating dangerous machinery or engaged in hazardous employments, and to other persons or employees of other corporations whose lawful duties require them to be or work about such machinery, or expose themselves to the hazards of the machinery or appliances in use by the owner thereof."

"This," the defendants concede in their petition for a rehearing, "is a clear, concise, and correct statement of the law as we understand it," but the defendants insist, "This law was not followed in this case." According to the contention of the defendants, "the complaint was drawn, and the case tried so far as plaintiff is concerned, and the jury was instructed upon the theory that the Employers' Liability Act of the State of Oregon extended to the protection of the general public as such."

10. We are unable to concur with the defendants. It is true that the trial court did repeatedly say to the jury in effect that the receivers of the lumber company were within the embrace of the Employers' Liability Act (Or. L., §§ 6605-6659) if the work carried on by them involved a risk or danger to the public; but it is also true that the court gave additional instructions which must be kept in mind, for, when testing the correctness of the instructions to the jury, we must view the charge as a whole. In substance, the court told the jury that the plaintiff was entitled to prevail if the defendants were engaged in a work involving a risk or danger to the public, and if the decedent was a member of the public rightfully upon the premises where he was injured; and then by a subsequent instruction, as pointed out in the original opinion, the trial judge explained to the jury what he

meant by the words "a member of the public" in the following language:

"In this connection, I instruct you that, if you find the decedent, at the time he received the alleged injuries, was upon the wharf of the North Pacific Lumber Company, defendant, and was in charge of the loading of the steamship 'Klamath,' either upon the express or implied invitation of the receiver, and that as captain of the said steamship his duties in respect thereto required that he be upon the wharf, that in that event he was a member of the public and as such was entitled to whatever protection the law provides for the public. Or if you find that the decedent was in charge of the loading of the vessel, and that the vessel was being loaded at the said wharf at the express or implied invitation of the receiver, that by reason thereof the decedent was entitled to go upon the wharf if it was reasonably necessary for him so to do in order to superintend the loading of the vessel, and while upon the wharf under such conditions he was a member of the public, he was, as a matter of law, rightfully upon the wharf."

The uncontradicted evidence shows that at the time of the accident the decedent was engaged in the work of superintending the loading of the ship. Captain Rorvik was not a loiterer, nor a trespasser, nor a mere idle member of the public; but he was engaged in work at the very moment of his hurt. He was in very truth a workingman at the time when and the place where he was hurt. The right of the plaintiff to recover was in the final analysis made to depend upon whether Captain Rorvik was rightfully upon the wharf, and his right to be on the wharf was in turn made to depend upon whether he was there performing work upon the express or implied invitation of the defendants. The charge, taken in its entirety, is sufficiently clear, and it is not likely that the jury was or could have been misled to the extent of believing

that the plaintiff was entitled to recover if the decedent was a mere member of the general public, regardless of whether or not he was engaged in the performance of work while lawfully on the premises. The charge, considered as a whole, required the jury to find, among other things, that the decedent at the time of the injury was lawfully and properly upon the wharf and engaged in the work of superintending the loading of the ship, before a verdict could be returned for the plaintiff; and hence the law as it is stated in the original opinion was applied by the trial jury.

11, 12. At this stage of the discussion we may for the moment pass over the defendants' second point, and proceed with the investigation of the third point; and, after disposing of it, we shall return to the second point urged by the defendants. After further study of the record we are persuaded that we must conclude that it cannot be said as a matter of law that Captain Rorvik's death resulted from a maritime tort. The theory has been advanced that the tort was a maritime tort, for the reason that Rorvik was engaged in a maritime contract. The test for determining whether a tort is a land or maritime tort is not the same as the test for determining whether a contract is a land or a maritime contract. The character of a tort is determined by the locality of the act; and consequently the fact that a person is injured while performing a maritime contract does not necessarily determine the character of the tort: *Swayne & Hoyt* v. *Barsch,* 226 Fed. 581, 590 (141 C. C. A. 337); *Thomas* v. *Lane,* Fed. Cas. No. 13,902 (2 Sumn. 1, 9); *Atlantic Transport Co.* v. *Imbrovek,* 234 U. S. 52, 59 (58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157, 34 Sup. Ct. Rep. 733); *Philadelphia W. & B. R. Co.* v. *Philadelphia & Havre de Grace Steam Towboat Co.,* 23 How. 215 (16 L. Ed. 433);

*The Plymouth,* 3 Wall. 20, 25 (18 L. Ed. 125, see, also,
Rose's U. S. Notes). According to the complaint, a
portion of the lumber piled upon the wharf was sud-
denly shoved forward, striking Rorvik, "by reason of
which he was knocked off the said wharf, receiving
therefrom mortal injuries, from the effects of which he
died." The first, further and separate defense found
in defendants' answer is framed upon the theory that
from some cause unknown to the defendants Rorvik fell
from the wharf "on and against the side of said steam-
ship 'Klamath,' and from thence on to some logs and
timbers in the Willamette River; that all of the injuries
received by the said decedent were received either
on the steamship 'Klamath' while the same was in the
Willamette River or were received on logs and timber
floating in said river; that the said Willamette River
was a navigable river." The allegations of this first
further and separate defense are denied by the reply.
The uncontradicted evidence is that some of the lum-
ber in the pile, beside which Rorvik was standing, was
suddenly shoved forward and struck him and knocked
him off the wharf. The evidence further shows that
Rorvik's back was broken. There was no attempt by
the defendants to show that the broken back was the
immediate result of striking the logs in the river, and
not the immediate result of being struck by the lumber
on the wharf. Notwithstanding the allegations of the
first further and separate defense the defendants
apparently abandoned any attempt to sustain those
allegations by any evidence offered at the trial; and,
moreover, the defendants did not attempt in their
original brief to urge the first further and separate
defense as a reason for defeating the claim of plain-
tiff. Furthermore, in their petition for a rehearing
the defendants say:

"It is not a maritime tort; the captain received his injury while on the land. * * The matter was not discussed in any of the briefs, nor in the oral arguments as to whether or not it was a maritime tort."

Thus it appears not only that we cannot say as a matter of law that the tort was a maritime rather than a land tort, but it also appears that the defendants themselves concede, and, indeed, insistently contend, that it was a land tort; and consequently we must agree with the contention of the defendants that we cannot say that the tort was a maritime tort. From this conclusion it follows as a natural sequence that there was nothing in the character and nature of the tort to prevent the Workmen's Compensation Act of California (Stats. 1913, p. 279) from operating. By the same token we must also conclude that there was nothing in the character or nature of the tort to prevent the plaintiff from invoking our Employers' Liability Act or to deprive the trial court of authority to award damages, unless some reason, other than the character of the tort, can be pointed out: See *The Albion* (D. C.), 123 Fed. 189; *The Straybo,* 98 Fed. 998 (39 C. C. A. 375). In short, the character of the tort does not render the California Compensation Act inoperative, nor does it prevent the enforcement of our Employers' Liability Act.

The second point urged by the defendants involves the contention that the award made under the provisions of the Workmen's Compensation Insurance and Safety Act of California precludes the plaintiff from prosecuting or maintaining this action. It will be recalled that Captain Rorvik, the husband of the plaintiff, was injured on August 3, 1916, and died five days afterwards, on August 8th. The plaintiff, on October 27, 1916, presented to the Industrial Accident Commission of California her claim for compen-

sation under the Workmen's Compensation Act of
that state. The Klamath Steamship Company, Ror-
vik's employer, answered and denied the claim made
by plaintiff. Subsequently, on December 19, 1916, the
steamship company amended its answer. Afterwards,
on January 19, 1917, a hearing was had and .an
award of $5,000 was made to the plaintiff by the Cal-
ifornia Industrial Accident Commission. The steam-
ship company was not satisfied with the award, and
by a writ of *certiorari* carried the controversy to the
Supreme Court of California, where on March 19,
1918, the award was affirmed; and on April 17, 1918,
a petition for a rehearing was denied: *A. F. Easter-
brook Co.* v. *Industrial Acc. Com.,* 177 Cal. 767 (177
Pac. 848). There is nothing in the record informing
us of the date when the instant action was commenced,
although it does appear that the second amended com-
plaint upon which the cause was tried was filed on
January 7, 1918, and hence the California proceeding
had not yet terminated when the Oregon action was
begun. It does not appear from the record that there
has ever been a *remittitur* from the Supreme Court
of California. For aught that appears from the rec-
ord, the litigation may be still pending; and, indeed,
it is asserted by the plaintiff in her brief, in answer
to the petition for a rehearing, that "the matter still
pends in the appellate courts, a writ of *certiorari* to
the Supreme Court of the United States having been
applied for." At any rate, it affirmatively appears
from the uncontradicted testimony of the plaintiff that
the California proceeding has been sufficiently stayed
to prevent her from obtaining any money. No pay-
ments have been made to her, for thus far she has
not been able to compel any payment; and, moreover,
the defendants have made no attempt to show that the
award made by the California Industrial Accident
Commission is final so that it is even now enforceable.

The defendants make two contentions in respect of the effect of the award. On the one hand, the defendants claim that they were entitled to an abatement of the Oregon action until the determination of the California proceeding; and, on the other hand, they argue that the California award at all times operated as an absolute bar to the subsequent Oregon action. The status of the California award, however, cannot affect the judgment rendered in the Oregon action, for in our view the result is the same whether we treat the record as a proceeding which is still pending or as an enforceable finality.

13, 14. We may assume for the purposes of this discussion that the proceeding begun before the California Industrial Accident Commission was "an action" within the meaning of that term as used in the law of abatement; and, notwithstanding the fact that all of the elements usually required to constitute "a prior action pending" were not present, we may further assume that there was such an identity of parties, issues, causes of action, and relief sought and obtainable as fully come within the embrace of the rules governing the abatement of actions; and even then, after assuming the existence of all such required elements, it cannot be said that the trial court erred in refusing to suspend the domestic action until the final determination of the foreign proceeding. The pendency of the prior action in another state does not entitle a party as a matter of right to an abatement of the second or domestic action, although the court may in its discretion postpone the second action until after a decision of the first action: *Beneke* v. *Tucker,* 90 Or. 230, 235 (176 Pac. 183). Even though we were called upon to determine whether the trial court ruled properly, instead of being required, as we are, only to

decide whether there was an abuse of legal discretion, our view would be that the trial court was justified in its refusal to suspend the domestic action and properly permitted the trial to proceed. Obviously the record furnishes no facts whatever upon which to base any claim that the trial judge abused his discretion in refusing to suspend the Oregon action. Although we have thus far assumed for the purposes of the discussion that all of the elements usually required to constitute an action pending were present, it is manifest that the relief sought and obtainable in the California proceeding is only partial, while the relief sought and obtainable in the domestic action is full and complete. In the California proceeding $5,000 is the limit of recovery, but in the Oregon action there is no arbitrary limit fixed by statute: 1 C. J. 72.

Section 31 of the California Compensation Act in substance declares that the making of a lawful claim against an employer for compensation shall operate as an assignment of any right of action the employee may have against a third person, and the employer is subrogated to the right of the employee and the employer may enforce in his own name the legal liability of the third person; but the statute also provides that any amount collected by the employer, in excess of the amount paid by the employer, or for which he is liable, shall be held by him for the benefit of the injured employee "or other person entitled." The defendants argue that, by force of the California statute, any right of action that Mrs. Rorvik may have had against the lumber company was automatically assigned to the steamship company, the employer of the decedent, when she filed her claim against the steamship company. The plaintiff counters by arguing that the right of action conferred upon her by our Employers' Liability Act would not survive her death,

and hence is not assignable under the laws of this
state; and, that, since a foreign statute conflicting
with the policy of our laws will not be enforced here,
the California statute did not effect an assignment.

15–18. Survivorship is the test of assignability.
Any claim which affects the estate of a party, although
arising out of tort, may be assigned; but the rule is
otherwise where it arises out of an injury to the per-
son. An assignment of a mere litigious right is in-
valid; but an assignment of property is valid, although
that property may be incapable of being recovered
without litigation. Stated broadly, nothing is assign-
able which does not directly or indirectly involve the
right of property except where otherwise provided
by statute. Rights given by statute for the redress
of personal wrongs are generally not assignable:
*Dahms* v. *Sears,* 13 Or. 47, 58 (11 Pac. 891) ; *Mitchell* v.
*Taylor,* 27 Or. 377, 384 (41 Pac. 119) ; *Sperry* v. *Sten-
nick,* 64 Or. 96 (129 Pac. 130) ; *Cooper* v. *Hillsboro
Garden Tracts,* 78 Or. 74, 86 (152 Pac. 488, Ann. Cas.
1917E, 840) ; *Mumford* v. *Wright,* 12 Colo. App. 214
(55 Pac. 744) ; *Dawson* v. *Great Northern etc. R. Co.,* 1
K. B. 260, 271; *Weller* v. *Jersey City etc. St. R. Co.,* 68
N. J. Eq. 659 (61 Atl. 459, 6 Ann. Cas. 442) ; 5 C. J.
886; 4 Cyc. 26. It has already been determined in
this jurisdiction that a right of action conferred upon
a widow by our Employers' Liability Act is a personal
right which dies with her; and hence, under the gen-
eral rule, such a right is not assignable: *Wilcox* v.
*Warren Construction Co.,* 95 Or. 125, 143 (186 Pac.
13). It has been held in other jurisdictions that a
cause of action for injuries resulting in death, under
a statute conferring such right upon a particular bene-
ficiary, is not assignable: *Marsh* v. *Western New
York etc. R. Co.,* 204 Pa. 229 (53 Atl. 1001) ; *Southern*

*Pacific Co.* v. *Winton,* 27 Tex. Civ. App. 503 (66 S. W. 477); *Texas etc. R. Co.* v. *Showalter,* 3 Wills. Civ. Cas. Ct. App., sec. 69.

19. If there were no factors to be considered except the language of the California statute and the general rule which in this state serves as the test of assignability, the plaintiff might well claim that the assignment declared by the California statute would not be enforced in this state, for the reason that it is contrary to the policy of our laws. However, there is another factor which must enter into the calculation. Our Workmen's Compensation Act contains a section which provides that, where an employee, or, in case of death, his dependent, elects to take under the Compensation Act for an injury done by "another not in the same employ," the cause of action "against such other shall be assigned to the state for the benefit of the accident fund": Section 6616, Or. L. Although there are material differences between Section 6616 of our statute and Section 31 of the California act, we may nevertheless assume, without deciding, that they are substantially the same; and we may further assume, without deciding, that because of the assignment required by Section 6616 of our statute, it is the present policy of our law to enforce assignments made under foreign statutes similar to ours, and that therefore the assignment effected by the California statute will be enforced in this jurisdiction, even though it be further assumed that the right of action exists only by force of our statute, and that there would be no right of action at all in the absence of our Employers' Liability Act. We have made the numerous assumptions previously mentioned in order that the contentions made by the defendants may be considered in a light most favorable to them. Although under the California act the employer is enabled to sue in his own

name, nevertheless, assuming that the steamship com-
pany became an owner of the right of action against
the lumber company, the steamship company became
such owner only to the extent of $5,000; and the bal-
ance of such right, which has since been proved to be
worth $7,500, in truth continued to be owned by Mrs.
Rorvik.   It will be remembered that Mrs. Rorvik ob-
tained a judgment for $12,500 against the defendants.
She either owns all of that judgment or a part of it,
and if she only owns a part of it, her part amounts
to $7,500.   It is true that the California statute pro-
vides that the employer may sue in his own name, but it
is also true that the statute does not declare that the
employee or his dependent cannot become a party.
The right of action was an entirety and could not be
divided, without the consent of the lumber company,
so as to enable the steamship company to sue for its
portion in one action, and Mrs. Rorvik to sue for the
balance in another action.   Since the right of action is
an entirety, but is in truth owned by two persons, and
both persons are necessary parties, then under the
rule which formerly prevailed in this jurisdiction both
owners would be required to join as plaintiffs, with
the result that, if one owner refused to appear as a
party plaintiff, the other owner would be powerless
to proceed in an action at law: *Home Mutual Ins. Co.*
v. *Oregon R. & N. Co.,* 20 Or. 569 (26 Pac. 857, 23 Am.
St. Rep. 151) ; *State Ins. Co.* v. *Oregon R. & N. Co.,* 20
Or. 563 (26 Pac. 838).   See, also, *Fireman's Ins. Co.* v.
*Oregon R. Co.,* 45 Or. 53 (76 Pac. 1075, 2 Ann. Cas.
360, 67 L. R. A. 161).   The rule was subsequently
changed, however, so that now in actions at law as
well as in suits in equity one owner desiring to sue may,
in case of the refusal of the other to join as a plaintiff,
make the other owner a party defendant, and thus
enforce the single right owned by the two persons:

*Williams* v. *Pacific Surety Co.*, 66 Or. 151, 156 (127 Pac. 145, 131 Pac. 1021, 132 Pac. 959, 133 Pac. 1186). See, also, *Thomas* v. *Thruston*, 87 Or. 650, 655 (171 Pac. 404); *Northwest Door Co.* v. *Lewis Inv. Co.*, 92 Or. 186, 190, 193, 199 (180 Pac. 495).

20. In the instant case it is clear that the steamship company was not the sole owner of the right of action, although it may have been and may still be the owner of a part of it. It is likewise clear that Mrs. Rorvik owned either the whole of the claim or the remaining portion of it, and because of such ownership she had an enforceable interest: *Overholt* v. *Dietz*, 43 Or. 194, 199 (72 Pac. 695); *Graham* v. *Light*, 4 Cal. App. 400 (88 Pac. 373). There was a single claim owned by two persons. One of the owners brought this action on this single claim without making the other owner a party, although the defendants could, by proper objections, have compelled the plaintiff to make the steamship company a party to the litigation. The defendants did not object to the omission, notwithstanding they had ample opportunity to do so; and because the defendants did not object they waived the defect: *Thompson* v. *Hibbs*, 45 Or. 141, 147 (76 Pac. 778); *Burggraf* v. *Brocha*, 74 Or. 381, 385 (145 Pac. 639); *Schultz* v. *Selberg*, 80 Or. 668, 677 (157 Pac. 1114); *Overholt* v. *Dietz*, 43 Or. 194, 196 (72 Pac. 695).

21. We may assume for the purposes of the discussion that the plaintiff cannot have two satisfactions, one in California and another in Oregon; and hence a satisfaction of the Oregon judgment would operate as a satisfaction of the California award. Thus far, however, neither the award nor the judgment has been satisfied. In effect, the steamship company has persistently denied that it owned any interest in the right of action against the lumber company, for the steamship company has from the very begin-

ning contested the claim for compensation made by Mrs. Rorvik and thus denied that her claim was a lawful one.   Moreover, the steamship company has by a formal written assignment at least attempted to transfer any interest it may have had to Mrs. Rorvik; and hence, even though it be assumed that this attempted assignment is without legal efficacy, it is plain that, in view of all the circumstances shown by the record, the steamship company cannot bring another action against the lumber company and prosecute it to a judgment for damages.   Moreover, the plaintiff testified as follows:

"I signed a paper saying that from what I won in this suit I would reimburse them [the steamship company] for any amount they might be paid, or that I might win in the courts there, which I haven't won so far."

We adhere to the conclusion reached in our original opinion, and it follows that the judgment from which the defendants have appealed must be affirmed.

AFFIRMED.

FORMER OPINION SUSTAINED ON REHEARING.