(87 Misc. Rep. 156)

### WASILEWSKI v. WARNER SUGAR REFINING CO.

(City Court of New York, Trial Term.    October, 1914.)

1. MASTER AND SERVANT (§ 250¾, New, vol. 16 Key-No. Series)—INJURY TO SERVANT—WORKMEN'S COMPENSATION ACT—DISMISSAL OF ACTION.
   Where an employé's action for injuries received in New Jersey after the taking effect of the Workmen's Compensation Act of New Jersey (P. L. 1911, p. 134, as amended by P. L. 1911, p. 763) is brought under the New Jersey Employers' Liability Act of 1909 (P. L. 1909, p. 114), regulating the common-law defenses of the employer, and not under the 1911 statute, and it appears that nothing was done by either plaintiff or defendant to avoid the application of the compensation plan provided for by such statute, the complaint will be dismissed.

2. MASTER AND SERVANT (§ 250¼, New, vol. 15 Key-No. Series)—INJURY TO SERVANT—WHAT LAW GOVERNS.
   In an action brought for injuries sustained by an employé hired and working in another state, plaintiff's rights and remedies are controlled by the statutes, decisions, and public policy of the other state.

3. MASTER AND SERVANT (§ 250¾, New, vol. 16 Key-No. Series)—INJURY TO SERVANT—WORKMEN'S COMPENSATION ACT—PUBLIC POLICY.
   The New Jersey Workmen's Compensation Act (P. L. 1911, p. 134, as amended by P. L. 1911, p. 763), which establishes a comprehensive system of definite compensation for industrial accidents, without regard to negligence, and provides that it shall govern the employer's liability in all cases where an express written stipulation to the contrary has not been entered into by the employer and employé when the contract of hiring was made, is not contrary to any public policy of New York.

Action by Robert Wasilewski, otherwise known as John Johnson, against the Warner Sugar Refining Company. Complaint dismissed.

James F. O'Neil, for plaintiff.
Lyman A. Spalding, of New York City (Thomas J. Skelly, of New York City, of counsel), for defendant.

RANSOM, J. [1] The plaintiff's claim of right to sue in this state under the New Jersey Employers' Liability Act of 1909 (Laws 1909, c. 83, Stat. N. J.) is based upon an extraordinary conception of law and

public policy. The New Jersey act of 1909 regulated common-law de-
fenses of the employer and paralleled many of the provisions of the
New York Employers' Liability Act as set out in section 200 et seq.
of the Labor Law (Laws 1909, c. 36; Consol. Laws, c. 31). On July
4, 1911, there went into effect in New Jersey a Workmen's Compensa-
tion Act (Laws 1911, c. 95, as amended by chapter 368, Stat. N. J.).
The 1911 statute established a comprehensive system of definite com-
pensation for industrial accidents, without regard to negligence, and
provided that it should govern the employer's liability in all cases where
an express written stipulation to the contrary was not entered into, by
employer and employé, at the time the contract of hiring was made.

After the taking effect of the Compensation Act, the plaintiff, who
lives in New York City, went over to the defendant's plant at Edge-
water, N. J., and there was hired by the defendant. Nothing was done
by master or servant to avoid the application of the compensation plan.
Concededly, if the plaintiff brought suit in New Jersey for the injuries
which he sustained in the Edgewater plant on August 9, 1912, his re-
covery would be fixed by the act of 1911. He would have no standing
in a New Jersey forum under the act of 1909, because that is looked
upon as superseded and repealed by the act of 1911, and the latter is
looked on by the New Jersey courts as establishing a constitutional
system of compensation unquestionably operative as to the plaintiff's
employment at Edgewater. Sexton v. Newark District Telegraph Co.,
84 N. J. Law, 85, 86 Atl. 451.

The plaintiff, however, does not now wish to accept the payment to
which he is entitled under the compensation plan. He is advised that
his injuries were due to the employer's negligence, and he wishes to
take his chances on getting a larger amount through a suit at law. Ac-
cordingly he starts suit in the state of his residence, and seeks to main-
tain an action under the 1909 statute of New Jersey, rather than under
the statute which was in force in that state at the time he was hired and
at the time he was hurt.

[2] It is familiar law that, in an action in this state for personal in-
juries sustained by an employé hired and working in another state, the
statutes, decisions, and public policy of the state in which the contract
of hiring was made are ordinarily recognized as fixing the plaintiff's
rights and remedies in this forum. Bakewell v. Orford Copper Co.,
160 App. Div. 671, 145 N. Y. Supp. 1070; Stokes v. Barber Asphalt
Paving Co., 134 App. Div. 363, 119 N. Y. Supp. 37; Dyke v. Erie R.
R. Co., 45 N. Y. 113, 6 Am. Rep. 43; Voshefskey v. Hillside Coal &
Iron Co., 21 App. Div. 168, 47 N. Y. Supp. 386; 2 Whart. Confl. Laws
(3d Ed.) 1103, 1105. If the employé claims in this state a right and
remedy under the statute of another state, the decisions of the courts
of the latter state, relative to such statute and such right or remedy,
are commonly recognized as controlling our administration of any rem-
edy afforded by such statute. Jessup v. Carnegie, 80 N. Y. 541, 36 Am.
Rep. 643; Zeikus v. Florida East Coast Ry. Co., 153 App. Div. 345,
138 N. Y. Supp. 478. In the Voshefskey Case, supra, where the plain-
tiff asserted in New York a right of action under the law of Pennsyl-
vania, the decision of the Pennsylvania court that a certain statute of
that state would prevent recovery by the plaintiff in Pennsylvania was

given enforcement by the courts of New York and held to prevent recovery here.

The plaintiff at bar seeks, however, to avoid these salutary rules of comity by assertion of the principle that New York courts will not recognize or enforce any statute or decision of another state, if the same be contrary to the established public policy of this commonwealth. Counsel for the plaintiff ingeniously argues that under the decision in Ives v. South Buffalo R. Co., 201 N. Y. 271, 94 N. E. 431, 34 L. R. A. (N. S.) 162, Ann. Cas. 1912B, 156, the New Jersey Compensation Act of 1911 must be regarded as repugnant to the fundamental public policy of this state, that accordingly no New York court can recognize the 1911 statute as effectively superseding or repealing the Liability Act of 1909, and that, therefore, the plaintiff may maintain suit in New York under a New Jersey statute which the legislative, executive, and judicial authorities of that state do not recognize as in force at the time the plaintiff was hired or at the time he was hurt.

[3] I cannot accept the contention of counsel that the Compensation Act of 1911 is repugnant to the public policy of this state. By going to New Jersey to obtain work, the plaintiff submitted himself to the law of the place of contract, and, if New Jersey courts find nothing in the 1911 statute to offend, why should New York courts reject it and remand the parties to protracted litigation under a statute which is out of harmony with the humanitarian spirit of to-day?

In the first place, is any New York court now warranted in holding that a workmen's compensation statute is contrary to the public policy of this state? By a constitutional amendment adopted in November, 1913, the people of the state declared, by an overwhelming majority, that no conception of public policy should thereafter be held to invalidate any workmen's compensation act, whether "compulsory" or "elective" in form. This state has itself put in force a compensation plan far more sweeping than the optional system embodied in the New Jersey law. It would be a curious turning back of the scroll of events to hold that "public policy" still prevents New York from recognizing New Jersey decisions upholding the constitutionality of a New Jersey statute applicable to a right concededly to be determined on the basis of the New Jersey law.

In the second place, with the public policy of New York now so definitely aligned on the side of compensation legislation, it at least seems reasonable to regard the decision in the Ives Case as hereafter applicable only to the precise matter before the court in that case, viz., a statute imposing liability on the employer "without his consent and without his fault." The New Jersey act of 1911 is "optional" or "elective" in form, and in many American courts the Ives decision has been held to be no precedent for the unconstitutionality of an "elective" system of compensation. Borgnis v. Falk Co., 147 Wis. 327, 133 N. W. 209, 37 L. R. A. (N. S.) 489; Opinion of Justices, 209 Mass. 607, 96 N. E. 308; Mondou v. New York, New Haven & Hartford R. R. Co., 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Cunningham v. Northwestern Improvement Co., 44 Mont. 180, 119 Pac. 554; Sexton v. Newark District Telegraph Co., supra;

State v. Clausen, 63 Wash. 535, 116 Pac. 7; Young v. Duncan, 218 Mass. 346, 106 N. E. 1, decided by the Supreme Court of Massachusetts in June, 1914. I do not believe that the Ives decision would properly be deemed now a holding that the public policy of this state forbids a compensation plan "optional" in the New Jersey sense; i. e., applicable unless the parties exercise their option and express in writing their intention not to be governed thereby.

An adjudication precisely in point is that in Albanese v. Stewart, 78 Misc. Rep. 581, 138 N. Y. Supp. 942, in which, as here, the plaintiff sued in New York for injuries received while he was employed in New Jersey. The defendant pleaded the New Jersey Compensation Act of 1911, and the plaintiff demurred to the defenses based thereon. Mr. Justice Cohalan, in overruling the demurrer, held that the New Jersey statute determined the plaintiff's rights and that the conceptions of public policy declared in the Ives decision did not bar the New Jersey act of 1911 from full recognition in the courts of New York.

In Schweitzer v. Hamburg-American Line, 78 Misc. Rep. 448, 138 N. Y. Supp. 944, the question was whether the employé's compensation act of Germany barred a New York action at common law by a workman hired in Germany. The learned justice in the Kings County Special Term held that the German statute was such a bar, and that the public policy of this state was not contravened by an "elective" or "optional" system of compensation, such as provided for in the German act. The Appellate Division for the Second Department evidently reached the same conclusion, in deciding a question of pleading in the same case. Schweitzer v. Hamburg-American Line, 149 App. Div. 900, 134 N. Y. Supp. 812.

Essentially the question under consideration was before the Appellate Division for the Second Department last February, in Bakewell v. Orford Copper Co., 160 App. Div. 671, 145 N. Y. Supp. 1070. The employé, who sued in this state, had been injured on an unguarded circular saw in a factory at Constable Hook, N. J., prior to the enactment of the Compensation Act of 1911. Under the antecedent statutes, as construed by the New Jersey courts, an employé might assume the risk of injury from an unguarded saw, even though, as was true in this case, an explicit statutory provision required the employer to provide suitable guards for such saws. Mika v. Passaic Print Works, 76 N. J. Law, 561, 70 Atl. 327; Goodrich v. Cort, 80 N. J. Law, 653, 77 Atl. 1049. The trial court submitted to the jury the question of assumption of risk, and the jury found adversely to the plaintiff. On appeal, the injured workman called attention to decisions of the New York Court of Appeals, subsequently to the trial of the action, in which the rule of the earlier case of Knisley v. Pratt, 148 N. Y. 372, 42 N. E. 986, 32 L. R. A. 367, was reversed, and the position was taken by Chief Judge Cullen that the public policy of this state "precludes an employé from assuming the risk created by a violation of the statute or waiving liability of the master for injuries caused thereby." Fitzwater v. Warren, 206 N. Y. 355, 99 N. E. 1042, 42 L. R. A. (N. S.) 1229; Welch v. Waterbury. Co., 206 N. Y. 522, 100 N. E. 426. From this it was argued that the public policy of this

state forbids recognition of the New Jersey rule that the employé may assume the risk created by a violation of statute. The learned justice who wrote for the Appellate Division, while in evident sympathy with the conception of public policy declared by Chief Judge Cullen (see Welch v. Waterbury Co., 159 App. Div. 509, 144 N. Y. Supp. 688), held that in determining rights governed by the New Jersey statute the New York courts should give effect to the view of law and policy declared by the highest courts of New Jersey.

The people of New Jersey, in response to a humanitarian sentiment largely created by organizations of employés, have established by statute a comprehensive and scientific system of compensation for personal injuries sustained by employés of the industrial enterprises of that commonwealth. The new system is deemed an enlightened and economical substitute for the haphazard and wasteful resort to litigation, which was the misfortune of both employer and employed, even under the Liability Act of 1909. The people of this state, by a deliberate expression of their mature will, have gone even further than the people of New Jersey in establishing the fundamental policy of the commonwealth as favorable to legislation of this character. No fancied fealty to those conceptions of policy held in this state before the adoption of the recent constitutional amendment should lead New York courts to refuse full enforcement now to the salutary New Jersey statute of 1911 and to the enlightened construction placed upon it by New Jersey courts.

The first trial of this case lasted three days and resulted in a disagreement of the jury. When it came on for retrial before me, I felt that the question of plaintiff's right to maintain this action should be determined before testimony was taken. After hearing argument, I granted the defendant's motion to dismiss, with the understanding that, if after the submission of briefs I became convinced that the dismissal was error, I would restore the cause to the calendar. The foregoing considerations convince me of the correctness of the action taken on the trial, and an order dismissing the complaint may now be entered.

Complaint dismissed.