AMERICAN RADIATOR COMPANY, PROSECUTOR, v. JOHN F. ROGGE, ADMINISTRATOR, DEFENDANT.

Argued June 3, 1914—Decided November 5, 1914.

In a proceeding under the Workmen's Compensation act, for compensation for the death of decedent, the contract of hiring was made in the State of New York, in which state there was no statutory provision for compensation, and decedent was employed to do work partly in that state and partly in New Jersey; he died in New Jersey as a result of injuries received while doing work he was employed to do in this state. *Held*, that while the liability imposed by the Workmen's Compensation act is contractual in character, it is not the result of an express agreement between the parties, but is an agreement implied by the law; and—*Held, further*, that the *lex fori* must govern, and that the act in question makes no distinction between cases arising under a contract made in New Jersey and a contract made in another state.

On *certiorari* to the Union Common Pleas.

Before Justices SWAYZE, PARKER and KALISCH.

For the prosecutor, *Franklin W. Fort* (*Fort & Fort* on the brief).

For the defendant in *certiorari*, *Abe J. David* and *John K. English*.

The opinion of the court was delivered by

SWAYZE, J.  This is a proceeding under the Workmen's Compensation act and raises the very interesting question of the applicability of that act where the contract of hiring was originally made in another state.  The original contract in this case was made in New York on April 11th, 1911, prior, that is, to the time when the Workmen's Compensation act took effect.  This fact is not important, for the reason that the decedent's salary was raised several times, the last on August 1st, 1912.  The change in salary necessarily made a new contract, which, if made in New Jersey, would certainly have been governed by the provisions of the act.  This new contract also was in fact made in New York.  The work the decedent was employed to do was partly in New York and partly in New Jersey; he died in New Jersey as a result of injuries received while about the work he was employed to do in this state.  The contention of the prosecutor is that as the relation is contractual, the contract must be governed by the law of New York, where it was made, and as that law at the time contained no provision for compensation, there can be no recovery.  We think the answer to the prosecutor's contention is that the right of recovery rests not upon the New York contract but upon the New Jersey statute.  The liability is indeed contractual in character by force of the very terms of the statute, but it is not the result of an express agreement between the parties; it is an agreement implied by the law, of a class now coming to be called in the more modern nomenclature of the books "*quasi*-contracts."  We find no evidence

in this case of any term in the New York contract that pro-
hibits the applicability of the New Jersey statute. If there
were, the parties could not by their agreement prevent New
Jersey from regulating the conduct of its own industries and
from prescribing as one of the terms upon which the perform-
ance of a foreign contract of hiring shall be permitted in this
state, the implication by law of a contract for compensation
to the workman. It is open to the employer under a New
York contract to prevent the operation of section 2 if he
wishes by notice; if he fails to give the notice, and undertakes
to perform the contract in New Jersey, he voluntarily subjects
himself to our law and is governed thereby. The statute
states the obligation in terms of the law of evidence; the con-
tract of hiring is presumed to have been made with reference
to section 2, and in the absence of express statement or written
notice, the parties are presumed to have accepted the pro-
visions of section 2. Rules of evidence are rules of procedure,
and procedure by well-settled principles is governed by the law
of the forum. This view, it must be confessed, is somewhat
technical, and we do not rest on it alone. The real object of
the statute was to create an irrebuttable presumption in the
absence of express statement or notice, and the creation of a
presumption irrebuttable, except in these ways, although it
may be in form a mere rule of evidence, is, in effect, a rule of
substantive law. As such we deal with it. As we have already
said, we find nothing in the New York contract inconsistent
with the contract implied by the New Jersey statute. In legal
principle the case does not differ from the contract to assume
the risks ordinarily incident to the employment that was
formerly implied from the contract of hiring. In that case
the contract to assume the risk was implied from the employe
entering upon the work; in this case it is implied from the
employer setting the employe to work in this state. The con-
tract of hiring itself need not in the one case contain any pro-
vision upon the assumption of risk, nor in the other any pro-
vision upon the assumption of the statutory obligation. We
do not believe it has ever been suggested that an employe
working in New Jersey under the old law was relieved of the

implied assumption of risk because his contract of hiring might have been made in a jurisdiction where that rule did not prevail. It is true the rule of assumption of risk probably prevailed where the English law was in force, but it prevailed in any case only as long as that rule was recognized by the state where the injury happened. The contract of hiring was merely the condition on which a rule, which may perhaps be called a regulation of industry, came into effect in the individual case. So, in the present case, the liability of the employer to make compensation is an obligation superimposed upon the original contract as a condition of its performance in New Jersey, and it is contractual in character because either party may escape the obligation by giving notice that he will not be bound thereby, and because it does not arise out of any wrong-doing. But the addition of this contractual obligation by statute does not affect the contract of hiring; that is still enforced as far as it goes by its terms.

Another analogy of a somewhat different character is to be found in the liability under the Death act. The relation of master and servant might be created by a contract of hiring in a jurisdiction where Lord Campbell's act had not been adopted, and the death might happen in a jurisdiction and under circumstances where the master would be liable under the act. We do not doubt that an action might be maintained in the latter jurisdiction. It is true the basis of that action is a tort, but it is a tort that results in a legal obligation only by force of the statute; the right of recovery there, as well as in a case under the Workmen's Compensation act, is a statutory obligation. An even stronger case is to be found in the law of common carriers. Attempts have been made to limit by express contract the liability of the carrier in jurisdictions where such limitations are valid, and actions have subsequently been brought in jurisdictions where the limitations were invalid. The courts have refused to enforce the limitation. *Nonotuck Silk Co.* v. *Adams Express Co.,* 99 *N. E. Rep.* 893; *Hughes* v. *Pennsylvania Railroad Co.,* 51 *Atl. Rep.* (*Pa.*) 990. The latter case was taken to the United States Supreme Court (191 *U. S.* 477), but it was not necessary for

that court to pass upon this question. Cases have arisen under the Harter act where the principle was approved. *Knott* v. *Botany Mills,* 179 *Id.* 69; *The Kensington,* 183 *Id.* 263; *The Germanic,* 196 *Id.* 589. These cases are to be sure not a very close analogy, since they are cases where the courts refused to enforce provisions undoubtedly valid by the proper law of the contract; here there are no conflicting provisions in the express contract of hiring. They illustrate the well-established rule that courts will not enforce contracts that conflict with the law of the forum, however valid by the law of the contract. *Flagg* v. *Baldwin,* 38 *N. J. Eq.* 219. Cases usually take the form of an express contract, some term of which is invalid by the law of the forum. The same principle must apply to a case like the present, where there is no express term in the contract; for what the defendant alleges is that in the absence of an express term, the law of New York forbids the applicability of the Workmen's Compensation act of New Jersey. Unless we go to that extent, the law of New York is not important. The real ground for refusing enforcement to the foreign law is that it conflicts with the public policy of the law of the forum. *Dic. Con. Laws* 32, 558; *Sav.. Pri. Int. L.* (*Guthrie's translation*), 199, 200. If we assume in favor of the defendant that there is an implied term in the New York contract adverse to the Workmen's Compensation act, we are then face to face with the question whether that act indicates the public policy of New Jersey, which will be enforced even as against a contract made in another state. We think it does. The legislation marks a complete change in the policy of the state, a change so complete that pecuniary liability in the class of cases covered by the act, rests not upon any fault of the defendant, but upon the simple fact of the relationship of employer and employe. The act makes no distinction between cases where that relationship is created by a contract made in New Jersey and a contract made in another state. The language of section 9 is general; it covers "every contract of hiring." The policy of the act would be thwarted if it were applicable in the case of some employes who were hired in this state and inapplicable to employes of the same

employer working side by side who were hired in another state. Compensation is secured to workmen, regardless of the employer's fault, because the legislature has thought such security to the advantage of our industries and our workmen. The public policy is not based upon some loose notions of the court based upon the opinions of our favorite newspaper or our political predilections, but upon the declared will of the legislature which has the right to determine our public policy.

For these reasons, we think the present case is governed by the act.

That the accident which resulted in the decedent's death arose out of and in the course of his employment seems clear under the rule of *Zabriskie* v. *Erie Railroad Co.*, 85 *N. J. L.* 157.

The judgment is affirmed, with costs.

PARKER, J. (dissenting).  I am unable to concur in the reasoning of the majority or in the result reached. The true rule to apply, as I view the case, is that laid down in *Mayer* v. *Roche*, 77 *N. J. L.* 681, that the law controlling the contract is that which the parties intended, or fairly may be presumed to have intended, should apply. That the liability in this class of cases is contractual is evident from the language of the statute, and it is so treated in the majority opinion.

The trial court did not find that the parties intended the New Jersey law to apply; and it would have had difficulty in so finding because the original employment was before our act was passed, and there was no express change in its terms except as to wages. That court put its finding of a New Jersey contract on the theory, discredited in *Mayer* v. *Roche, supra, lex loci solutionis.*

We have, therefore, no finding of fact that the law of this state was intended to apply; and we cannot make that finding for ourselves. The judgment, therefore, cannot be supported, and I think ought to be reversed.

A practical objection to the theory of the majority opinion is that cases will arise of contracts of employment made elsewhere and intended to be regulated by the *lex loci contractus,*

in which the accident occurs in this state, but the employer cannot be served within this state. In such cases we cannot expect that courts of other states will accept our construction of the act and thereby oust themselves of jurisdiction. The confusion that would result is obvious.