## BRADFORD ELECTRIC LIGHT CO., Inc., v. CLAPPER.

### No. 2465.

Circuit Court of Appeals, First Circuit. Jan. 8, 1931.

On Rehearing June 29, 1931.

WILSON, Circuit Judge, dissenting.

Robert W. Upton, of Concord, N. H. (Joseph C. Donovan, of Concord, N. H., on the brief), for appellee.

Stanley M. Burns, of Dover, N. H. (Hughes & Burns, of Dover, N. H., on the brief), for appellant.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

WILSON, Circuit Judge.

This is an action under the Lord Campbell Act of New Hampshire, sections 9–14, c. 302, Pub. Laws 1926, to recover for injuries resulting in the death of the plaintiff's intestate and alleged to have occurred through the negligence of the defendant corporation.

The defendant in the action and appellant in this court is a public utility corporation organized under the laws of Vermont, and having its principal place of business in the town of Bradford in Vermont. It is engaged in furnishing electric current for public uses in both Vermont and New Hampshire. The plaintiff's intestate was a resident of Bradford, but received his injuries in the course of his employment in the state of New Hampshire.

The contract of employment of the plaintiff's intestate was entered into in Vermont. His work was that of a lineman, and at times he performed the duties of a "trouble shooter," or an emergency man, who might be sent out at any time to repair sudden breaks in the lines.

In the evening of the day on which his injuries occurred, he was requested to go across the Connecticut river to restore burned-out fuses at a substation in the town of Haverhill, which lies on the east bank of the river in the state of New Hampshire, where in the course of his work he came in contact with high-tension wires and received the injuries which caused his death.

The action was originally brought in the New Hampshire superior court, and on petition of the defendant was removed to the federal District Court on the ground of diversity of citizenship; the plaintiff being a citizen and a resident of New Hampshire. On the third trial before a jury, it resulted in a verdict for the plaintiff for $4,000.

Vermont in 1915 (Pub. Laws 1915, No. 164) adopted what is known as a Workman's Compensation Act of the elective type, common in most of the states, under which either the employer or employee could adopt its provisions or retain his rights at common law. To induce the employer to assent to be bound by its provisions, he was, in case of refusal, deprived of his common-law defenses of assumption of risk, negligence of a fellow servant, and contributory negligence; while the employee, in case he did not assent, must meet those defenses in addition to proving that his injuries were due to his employer's negligence. In case both assented and the employee suffered injury arising out of, and in the course of, his employment, he received compensation based on his average weekly wage during his incapacity, whether his employer was negligent or not, and even though his injury was due entirely to his own negligence, or to that of a fellow servant, or was the result of pure accident.

Both employer and employee under the Vermont act, as in many of the compensation

acts of other states, are presumed to have accepted the act unless notice is given to the contrary. As the court of one state has put it, the failure to give such notice creates an irrebuttable presumption of assent. American Radiator Co. v. Rogge, 86 N. J. Law, 436, 92 A. 85, 94 A. 85.

Such provisions for the acceptance of the act have always been held sufficient to bind the parties, and in no case has any such statute been held invalid as against public policy, or in violation of any constitutional provision on this ground. Opinion of the Justices, 209 Mass. 607, 610, 611, 96 N. E. 308; Mackin v. Detroit-Timkin Axle Co., 187 Mich. 8, 153 N. W. 49; American Radiator Co. v. Rogge, supra; Johnston v. Kennecott Copper Corp. (C. C. A.) 248 F. 407; Hopkins v. Matchless Metal Polish Co., 99 Conn. 457, 460, 121 A. 828; Crane v. Leonard, Crossette & Riley, 214 Mich. 218, 183 N. W. 204, 18 A. L. R. 285; Industrial Commission v. Ins. Co., 64 Colo. 480, 174 P. 589, 3 A. L. R. 1336; Rounsaville v. Railroad Co., 87 N. J. Law, 371, 94 A. 392; Pierce v. Storage Co., 185 Iowa, 1346, 172 N. W. 191; Foughty v. Ott, 80 W. Va. 88, 92 S. E. 143; State ex rel. Chambers v. District Court, 139 Minn. 205, 166 N. W. 185, 3 A. L. R. 1347; Anderson v. Miller Scrap Iron Co., 169 Wis. 106, 170 N. W. 275, 171 N. W. 935; Post v. Burger & Gohlke, 216 N. Y. 544, 111 N. E. 351, Ann. Cas. 1916B, 158; Hospers v. J. Hungerford Smith Co., 230 N. Y. 616, 130 N. E. 916.

It is also generally held that such a statute on acceptance by both parties becomes a part of the contract of employment and is exclusive of all other remedies in case of injuries. Kennerson v. Thames Towboat Co., 89 Conn. 367, 371, 94 A. 372, L. R. A. 1916A, 436; Powers v. Hotel Bond Co., 89 Conn. 143, 147, 93 A. 245; Hopkins v. Matchless Metal Polish Co., 99 Conn. 457, 460, 121 A. 828; Gooding v. Ott, 77 W. Va. 487, 87 S. E. 862, L. R. A. 1918D, 637; Hunter v. Coal Co., 175 Iowa, 245, 154 N. W. 1037, 157 N. W. 145, L. R. A. 1917D, 15, Ann. Cas. 1917E, 803; Deeny v. Wright & Cobb Lighterage Co., 36 N. J. Law J. 121; Industrial Commission v. Ins. Co., supra; Dettloff v. Hammond, Standish & Co., 195 Mich. 117, 161 N. W. 949; Grinnell v. Wilkinson, 39 R. I. 447, 98 A. 103, L. R. A. 1917B, 767, Ann. Cas. 1918B, 618; Barnhart v. American Concrete Steel Co., 227 N. Y. 531, 125 N. E. 675; Martin v. Kennecott Copper Corp. (D. C.) 252 F. 207.

In terms, the Vermont act, section 5770, G. L. 1917, covers injuries to employees who are hired in that state, but whose employment requires them to perform work in another state where they are injured. It is now held with but few, if any, exceptions, at least under elective acts, and whether in terms covering injuries in another state or not, that, when assented to by both parties, a compensation act of the state of employment, at least in so far as it is administered in that state, will cover injuries received in the course of the employment in another state. In this sense such acts are said to have an extraterritorial effect. See cases above cited.

Massachusetts, in construing its original act in an early decision, Gould's Case, 215 Mass. 480, 102 N. E. 693, Ann. Cas. 1914D, 372, held the contrary, and this decision was followed in a few states; but Massachusetts since its decision in the Gould Case has amended its act, and in a recent decision, Penderzoli's Case, 169 N. E. 427, decided January 3, 1930, now holds its act under a contract of employment entered into in Massachusetts covers injuries received by the employee in another state. The great weight of authority now sustains this construction as the most practical. Otherwise great confusion would result as to the rights and obligations of employer and employee, where employees are sent out of the state to do work.

In this case, as neither the defendant corporation nor the plaintiff's intestate gave notice of a refusal to assent to the Vermont act, both were bound by it, and its provisions became a part of the contract of employment and covered all injuries, whether received in Vermont or New Hampshire, and for which under the Vermont act no action at common law based on negligence would lie. See cases above cited.

There can be no doubt, therefore, if the proceedings had been brought under the Vermont statute, the plaintiff's intestate could have recovered only the sum provided where there are no dependents; and herein lies the reason for this action. The deceased had no dependents, and, as is provided in all such acts, including that of New Hampshire, in such cases only a comparatively small sum to provide for burial expenses is allowed.

As the court said in Wasilewski v. Warner Sugar Refining Co., 87 Misc. Rep. 156, 149 N. Y. S. 1035, 1036: "The plaintiff, however, does not now wish to accept the payment to which he is entitled under the compensation plan. He is advised that his injuries were due to the employer's negligence, and he wishes to take his chances on getting a larger amount through a suit at law."

The comment of the court in the New York case aptly applies to the heirs of the deceased in this case, who probably suffered little financial loss, if any, by his death. Because the accident happened in New Hampshire, they seek to bring their action under its death statute and recover a larger sum than they could recover under the Vermont law.

At the opening of the trial in the federal court, the defendant filed its answer and a brief statement of defense in which it set up the provisions of the Vermont Compensation Act, and the fact that the defendant and the deceased were both residents of Vermont, that the deceased was hired in Vermont, and that both the defendant and deceased had accepted the Vermont act, all of which it claimed was a bar to the action, and moved for a dismissal of the action.

The plaintiff then moved that the brief statement be rejected on the following grounds:

(1) That the Workmen's Compensation Law of Vermont has no extraterritorial force or effect and does not control the rights of the parties in this litigation.

(2) That the rights of the parties to this action are determinable solely by the laws of the state of New Hampshire.

(3) That the plaintiff's cause of action accrued under and by virtue of the laws of New Hampshire, the injury causing the death of the plaintiff's intestate occurring while he was employed within said state.

(4) That the matters set forth in the defendant's brief statement do not constitute a valid and legal defense to the plaintiff's cause of action.

This motion was in effect a demurrer to the brief statement and an admission of the facts stated therein.

The District Court we think misconceived the nature of the defense set up in the brief statement, probably due to the fact that the plea of the defendant ended with a motion to dismiss the action, and held that it was a plea to the jurisdiction and denied the motion to dismiss on the ground that the Vermont statute had no extraterritorial effect and that the action was under the Employers' Liability Act, and was based on tort and not on contract.

From one viewpoint the court's ruling may have been technically correct, but both parties apparently accepted it as a ruling that the facts set forth in the brief statement did not constitute a good defense to the action. The case was evidently tried upon the understanding that the court had ruled that the Vermont contract was without effect as a defense. Counsel so argued the case before this court on appeal; the defendant having made the court's ruling on these motions its first assignment of error.

The industrial policy embodied in these statutes was borrowed from England and Germany. The first act in this country was adopted in 1910 in the state of New York, which was declared unconstitutional by the state court. Ives v. South Buffalo R. Co., 201 N. Y. 271, 94 N. E. 431, 34 L. R. A. (N. S.) 162, Ann. Cas. 1912B, 156.

New Hampshire in 1911 (Laws 1911, c. 163) adopted a modified form of a compensation law applicable only to certain hazardous employments, one of which was work on electric lines. Like the acts of most of the other states adopted about that time and since, it is elective, but differs in this respect, that the employee or his representative, in case of his death from injuries received in the course of his employment, is not obliged to elect until after the injury occurs.

The defendant company accepted the New Hampshire act, but neither the deceased nor his representative ever did. While the defendant's reasons for so doing were not disclosed by direct testimony, it appears in the record that its operations extended some distance into New Hampshire, and it perforce must at times, at least, have employed men in that state as well as in Vermont. If it wished to retain its common-law defenses as to these men, it must accept the act.

The first and real question to be decided in this case, the relations between the employer and employee being contractual, is whether the law of the lex loci contractus should govern under the well-recognized principles of comity, or the law of the state where the tort occurred.

Under the doctrines of conflict of laws, there are certain general rules which are well settled: (1) A tort action is governed by the law of the state where the injury occurred; (2) no state law has any extraterritorial effect in the sense that it becomes part of the statutory law of another state or controls the courts of any other state in administering justice; (3) on the principles of comity, however, a contract entered into in one state, if valid in that state, will be enforced in the courts of another state unless contrary to its laws or public policy.

These doctrines at the outset raised many new problems in connection with the administration of compensation acts, and there has been some conflict of decisions; but there is a clear tendency, we think, for the courts to settle down on the policy of enforcing contracts under them according to the law of the state in which they were made.

Connecticut at one time applied its own Compensation Law to a contract of employment entered into in New York to be performed in Connecticut, Banks v. Howlett Co., 92 Conn. 368, 102 A. 822; but it later limited the decision to the facts in that case, Hopkins v. Matchless Metal Polish Co., 99 Conn. 457, 460, 121 A. 828; and finally overruled it in Pettiti v. Pardy Construction Co., 103 Conn. 101, 109, 130 A. 70.

New York has in one or more cases held that the recovery of compensation in the state of the injury will not prevent recovery in the state of employment, when both employer and employee have assented to the Compensation Act of each state. Jenkins v. Hogan & Sons, 177 App. Div. 36, 163 N. Y. S. 707; Gilbert v. Des Lauriers Column Mould Co., 180 App. Div. 59, 167 N. Y. S. 274.

These cases, however, granting compensation in New York when compensation was also allowed in New Jersey, have since been distinguished in Anderson v. Jarrett Chambers Co., 210 App. Div. 543, 206 N. Y. S. 458, where it was held that, if the contract of employment was a New York contract, and the employment hazardous, the employee could not waive his rights under the New York compulsory statute by the acceptance of compensation under the New Jersey act; but, where the contract was a New Jersey contract and the accident occurred in New York, the New York courts follow Connecticut, in that they will not take jurisdiction, but leave the party to his remedy in New Jersey. Minto v. Hitchings & Co., 204 App. Div. 661, 198 N. Y. S. 610, 612; Schweitzer v. Hamburg-Amerikanische, 78 Misc. Rep. 448, 138 N. Y. S. 944; also, see Mosely v. Empire Gas & Fuel Co., 313 Mo. 225, 281 S. W. 762, 45 A. L. R. 1223; Pettiti v. Pardy Construction Co., 103 Conn. 101, 130 A. 70; Hopkins v. Matchless Metal Polish Co., 99 Conn. 457, 121 A. 828; Wasilewski v. Warner Sugar Refining Co., 87 Misc. Rep. 156, 149 N. Y. S. 1035; Barnhart v. Am. Concrete Steel Co., 227 N. Y. 531, 125 N. E. 675; Norman v. Hartman Furniture Co., 84 Ind. App. 173, 150 N. E. 416.

The New Jersey court, in Rounsaville v. Central R. Co., 87 N. J. Law, 371, 374, 94 A. 392, but in a dictum, also intimated that, even though compensation had been granted in another state because the accident occurred there, it would not prevent the New Jersey court from granting compensation, provided the contract was a New Jersey contract. The actual decision in this case, however, is not of necessity out of harmony with those holding that it is the lex loci contractus which governs. Hopkins v. Matchless Metal Polish Co., supra; Norman v. Hartman Furniture Co., supra; Minto v. Hitchings & Co., supra; Schweitzer v. Hamburg-Amerikanische, supra. In the case of Johns-Manville v. Thrane, 80 Ind. App. 432, 141 N. E. 229, cited by plaintiff to sustain the contention that it is the law of place of injury which governs, it will be found that the contract of hiring in that case was held to be an Indiana contract, while in Norman v. Hartman Furniture Co., supra, the Indiana court refused compensation, though the accident occurred in Indiana, on the ground that the contract was an Illinois contract and the law of that state controlled. Since the decision in the New Jersey case, we think there has been a change in the attitude of the courts toward these laws and their extraterritorial effect.

The New York court, in Minto v. Hitchings & Co., remarked with appropriateness, we think, that it would be "unseemly for a person to seek redress under the law of his own state, succeed, and afterwards institute the same proceedings in a different forum under the law of another state." It would also appear that the converse should be equally unseemly, unless under the circumstances found in Anderson v. Jarrett Chambers Co., supra.

Bradbury in his third edition of his work on Compensation Law, page 88, after reviewing the result of the administration of the law for nearly two decades, says: "It would seem that the application of the doctrine that the parties should be governed by the workmen's compensation law of the state where the contract of employment was made, would settle very many of the difficulties which are bound to arise and any other doctrine would multiply these difficulties."

Counsel for plaintiff contends that it is against the public policy of New Hampshire for an employee to enter into a contract relieving his employer of liability for injuries due to the employer's negligence; but the rule against contracts relieving an employer

of liability for his own negligence is the law in practically every jurisdiction. It is now well settled that compensation acts are not contrary to public policy, but are everywhere recognized as humane, economic, and in the interest of the employee and the general wel-fare of the state; and nowhere is this more admirably stated than in Mulhall v. Nashua Mfg. Co., 80 N. H. 194, 115 A. 449.

When New Hampshire adopted its Compensation Act the constitutionality of such legislation was then being questioned in other states. Ives v. South Buffalo R. Co., supra. The New Hampshire Legislature, out of abundance of caution, not only limited its acts to hazardous employments, but, in order to avoid the possibility that it might be held to constitute an agreement to waive liability on account of an employer's negligence, permitted acceptance of the compensation provided in the statute after the injury, upon the theory, it may have been, that it would then be held to be in the nature of a settlement of employee's claim; but this fear, if such it was, has proved groundless, as the cases above cited hold. No other state has adopted such a similar provision for acceptance. That the New Hampshire Legislature adopted this peculiar provision in its act upon the ground that an acceptance of the act before injury would be injurious to the welfare of the people of New Hampshire is highly improbable.

As a rule, the federal courts will follow the decisions of the state courts in interpreting their statutes or in determining the public policy of the state; but the New Hampshire courts have not yet held any Compensation Act of a sister state contrary to its public policy, or passed on the question here involved. We must, therefore, decide the issues in the light of the decisions of other jurisdictions. In view of the declarations in Mulhall v. Nashua Mfg. Co., supra, however, we cannot conceive of the New Hampshire court of last resort holding as a general proposition that a statute, which has been adopted in so many states, and acclaimed far and wide as one of the most beneficent acts of recent years in promoting the general welfare of the working man, is contrary to the general welfare of the citizens of New Hampshire on the first grounds urged by counsel.

But it is also urged that the law of Vermont, inasmuch as it presumes the acceptance of its act from silence, is contrary to the public policy of New Hampshire, since the New Hamphire act permits acceptance after the injury and also requires a positive act.

If the Vermont act as a whole is not contrary to the public policy of New Hampshire, can it then be said that, merely because the provision of the Vermont act as to the acceptance of the act differs from that of the New Hampshire act, it is contrary to the public policy of New Hampshire?

No brief all-inclusive definition of what is meant by public policy has yet been evolved. In general it is said that, to be contrary to the public policy of a state, a contract must be inconsistent with good morals, natural justice, or the public welfare or some positive law forbidding it. As to the nature of contracts held to be against public policy and its scope, see 6 R. C. L. 707 et seq. § 114–214; Williston on Contracts, vol. 3, c. XLIV–XLVIII.

The Washington state court said, in State ex rel. Baker, etc., R. Co. v. Nichols, 51 Wash. 619, 99 P. 876, 877: "Comity depends, not alone upon a disposition to favor the citizen of another state or country, but rests upon well-settled principles of practice, expediency, and convenience. It is a rule recognized by courts, and applied within bounds of discretion. It is based upon the statute law or decisions * * * of other states or countries rather than upon our own. These will be recognized and given force if it be found that they do not conflict with the local law, inflict an injustice on our own citizens, or violate the public policy of the state."

The United States Supreme Court in Oscanyan v. Arms Co., 103 U. S. 261, 277, 26 L. Ed. 539, said, as a matter of comity: "The general rule undoubtedly is that the validity of a contract is to be decided by the law of the place where it is made, unless it is to be performed in another country; but to this, as to all general rules, there are exceptions, and among these Story mentions contracts made in a foreign country to promote or reward the commission of crime, to corrupt or evade the due administration of justice, to cheat public agents, or to affect the public rights, and other contracts which in their nature are founded in moral turpitude, and are inconsistent with the good order and solid interest of society. 'All such contracts,' he adds, 'even although they might be held valid in a country where they are made, would be held void elsewhere, or at least ought to be, if the dictates of Christian morality, or even of natural justice, are allowed to have their due force and influence in the administration of international jurisprudence.' Story, Conflict of Laws, sec. 258."

998

As to what acts are injurious to the welfare of the public, legislative bodies in enacting statutes may differ, it is true. Contracts may be valid in one state and be invalid by express prohibition in another. The adoption of a workmen's compensation·act may properly be held to establish a public policy in a state, and any contract contrary to its general aim and purpose may be held contrary to its public policy.

The Supreme Court of the state of Washington, however, in Reynolds v. Day, 79 Wash. 499, 140 P. 681, L. R. A. 1916A, 432, although it had, by a compulsory compensation act as to hazardous employments, and by voluntary assent as to nonhazardous, done away with the old common-law remedy for injury through negligence, which its Legislature declared to be "inconsistent with modern industrial conditions," enforced a common-law remedy of a sister state on the ground of comity, and held it was not contrary to the public policy of Washington, as it still retained the common-law remedy in certain cases.

If it should be held, however, that every provision of these compensation acts established a definite public policy for the state adopting it, then it would follow that a state which required a positive act of acceptance by the employer would be against the public policy of a state which presumed his acceptance, unless he gave notice, and vice versa; or a state having an act applying to hazardous employments, such as New York, would hold an act covering also nonhazardous occupations, as New Jersey or Connecticut, was contrary to its public policy; or an act granting fixed weekly sums for certain injuries is contrary to the law of state basing compensation for all injuries on a percentage of the average weekly wage. But details of this nature have never been ·regarded as establishing a definite public policy as to each detail. Otherwise we should have the confusion which the courts have been seeking to avoid by holding that the law of the lex loci contractus should govern where the injury occurred in another state, since few of these acts are an exact counterpart of any other.

The numerous decisions of the courts giving these acts extraterritorial effect would then be of little value, as an injured employee, whenever his contract of employment was in one state where he had accepted a compensation act, and he was injured in another, might in every such case, if to his advantage, bring a common-law action in the state where injured, provided the act of the. state of employment differed in any important provision from the act of the state where the injury occurred; but no court has yet so held. See decisions cited above.

The state courts have repeatedly held that, because a statute of one state differs in some of its provisions from that of the state of the forum, it does not follow˙ that the courts of the state of the forum would not enforce contracts entered into in the other state and valid under its law, though not in compliance with the lex fori, especially where both statutes were enacted with the same purpose in view.

The Minnesota court, in Herrick v. Minneapolis & St. Louis Ry. Co., 31 Minn. 11, 16 N. W. 413, 47 Am. Rep. 771, which is quoted with approval by the United States Supreme Court in Northern Pac. R. Co. v. Babcock, 154 U. S. 190, 14 S. Ct. 978, 981, 38 L. Ed. 958, says: "It by no means follows that, because the statute of one state differs from the law of another state, therefore it would be held contrary to the policy of the laws of the latter state. Every day our courts are enforcing rights under foreign contracts where the lex loci contractus and the lex fori are altogether different, and yet we construe these contracts and enforce rights under them according to .their force and effect under the laws of the state where made. To justify a court in refusing to enforce a right of action which accrued under the law of another state because against the policy of our laws, it must appear that it is against good morals or natural justice, or that, for some other such reason, the enforcement of it would be prejudicial to the general interests of our own citizens."

To the same effect is Chicago & E. I. R. Co. v. Rouse, 178 Ill. 132, 52 N. E. 951, 44 L. R. A. 410; Stewart v. Balt. & Ohio R. Co., 168 U. S. 445, 18 S. Ct. 105, 42 L. Ed. 537; Higgins v. Central N. E. & W. R. Co., 155 Mass. 176, 29 N. E. 534, 31 Am. St. Rep. 544; Morris v. Chicago, R. I. & P. R. Co., 65 Iowa, 727, 23 N. W. 143, 54 Am. Rep. 39.

The New York court, in Leonard v. Columbia Steam Nav. Co., 84 N. Y. 48, 38 Am. Rep. 491, in enforcing a contract entered into in another state, held: "The rule here laid down is just and reasonable, and it is not essential that the statutes should be precisely the same as that of the state where the action is given by law or where it is brought, but merely requires that it should be similar in import and character."

A case analogous to, if not on all fours, with the instant case, is that of Barnhart v. Am. Concrete Steel Co., 227 N. Y. 531, 125 N. E. 675, where the parties were residents of New Jersey and assented to its act, but the deceased was killed in the course of his employment in New York and sought to recover in a common-law action in that state under the statutes of which it was provided that the right to recover damages for death should never be abrogated. The New York court held there was no recovery and that the New Jersey Compensation Act, though optional and differing from its own and providing for a contractual compensation in case of death, was not against the public policy of New York. Also see Schweitzer v. Hamburg-Amerikanische, supra; Ora Scott v. White Eagle Oil & Ref. Co., 47 F.(2d) 615, decided in federal District Court of Kansas, February 3, 1930.

Nor is it clear that the part of the New Hampshire act as to acceptance was intended to be mandatory, and, if held to be for the benefit of the employee, could not be waived by the employee and employer, and that an agreement to accept prior to the injury would not be enforced. Mulhall v. Nashua Mfg. Co., supra; Kelsea v. Ins. Co., 78 N. H. 422, 425, 101 A. 362.

It has been suggested that it has been held in two jurisdictions that, when compensation allowed in one state was not sufficient, additional compensation might be recovered in another state, citing Farr v. Babcock Lumber Co., 182 N. C. 725, 109 S. E. 833, and Rorvik v. North Pac. Lumber Co., 99 Or. 58, 190 P. 331, 195 P. 163. But on careful examination of the facts it will be found that the first, if it has any application, is contra; and the second was for the recovery of damages for injuries caused by a third party other than the employer; and provision is usually made in compensation acts whereby, if the injury was due to the negligence of a third party, the employer, having paid compensation under the act, is subrogated to the rights of the employee against the third party, and, if an employer fails to sue, the employee may.

We are of the opinion that there is nothing in the contract entered into between these parties in Vermont that is contrary to the main purpose of the New Hampshire act, or inimical to the welfare of its citizens, and, according to the trend of recent decisions in other jurisdictions, the contract of hire under the Vermont act, upon the principles of comity, constitutes a good defense to an action under the New Hampshire death statute, there having been no contract of hire in New Hampshire.

The judgment of the District Court is vacated, the verdict is set aside, and the case is remanded to that court for further proceedings not inconsistent with this opinion; the appellant recovers costs of appeal.

ANDERSON, Circuit Judge (dissenting).

The gist of the opinion is that a contract made in Vermont bars the action for negligence in New Hampshire. This amounts to saying that a Vermont contract may change the public policy of New Hampshire. New Hampshire is a sovereign state. Except as limited by the Federal Constitution, Knickerbocker Ice Co. v. Stewart, 253 U. S. 149, 40 S. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145, and cases cited, its public policy is completely within the control of its own Legislature and its own courts. No other state can change it, either directly or indirectly by implying contracts. In New Hampshire, at common law, contracts relieving employers from liability for future negligence are void. Piper v. Railroad, 75 N. H. 228, 72 A. 1024. This is the universal rule.

The New Hampshire Compensation Act (Pub. Laws 1926, c. 178, §§ 11, 12) reasserts the common-law rule. The Legislature has thus clearly and recently indicated its adherence to the common-law rule as to contracts against negligence. The public policy of New Hampshire is not subject to determination by this court "in the light of the decisions of other jurisdictions." Plaintiff's rights rest solely under the law of New Hampshire, where the accident occurred and the suit was brought. This court has no right to change that law. The ruling now made is equivalent to assuming legislative power in New Hamphire. New York Central R. Co. v. Chisholm, 268 U. S. 29, 31, 32, 45 S. Ct. 402, 69 L. Ed. 828, 38 A. L. R. 1048; Union Trust Co. v. Grosman, 245 U. S. 412, 38 S. Ct. 147, 62 L. Ed. 368, and authorities cited; Dicey Conflict of Laws, Notes of American Cases, p. 669, and cases cited; 3 Williston Contracts, § 1792.

On Rehearing.

ANDERSON, Circuit Judge.

On rehearing, the attention of the court is sharply directed to the fact that the defendant expressly accepted the New Hampshire Workmen's Compensation Act

(Pub. Laws N. H. 1926, c. 178). This act reserves, in section 11, to the employee or his legal representative, an action at law for damages or death caused by negligence. It is clear that this act applies to actions for negligence occurring in New Hampshire, and that its acceptance binds the defendant in this action of tort. We are also satisfied that we were in error in our previous holding, and that no contract made in Vermont purporting to release an employer from liability for future negligence can bar an action brought in New Hampshire for an injury there sustained, and thus change the public policy of New Hampshire. See Saloshin, Adm'x, v. Houle (N. H.) 155 A. 47, decided May 5, 1931. It follows that on both grounds the former decision of this court must be reversed.

This disposes of the defendant's main reliance.

■ The other assignments of error call for but brief discussion. There was evidence tending to show that at the time of his death on July 30, 1926, the decedent, 21 years old, had been employed for about two years by the defendant as a lineman; that he had had no technical training in electricity; that in the early summer of 1926 the defendant extended its lines in New Hampshire and made material alterations in the Haverhill substation where Clapper was electrocuted; that these changes left that substation as the only one of seven in which there was no switch which would "kill" or make the entire station safe for employees to work thereon; that, as the result of a thunder shower on the night of July 30, Clapper went to this substation to replace an apparently blown-out fuse; that he threw the old switch, with which he was familiar, apparently assuming that he would thus make the station safe for his work; that shortly thereafter he was heard to groan, and that his body was found electrocuted; that, in order to make that substation entirely safe, it was necessary to use a disconnecting switch at Newbury, on the Vermont side.

While the evidence was somewhat conflicting, the crucial questions of defendant's negligence in exercising reasonable care to provide a sufficient disconnecting switch at the Haverhill substation, and/or to give to the decedent adequate warning of the danger of reliance on the old switch, were plainly questions of fact for the jury.

■ The charge to the jury was accurate and adequate. The defendant pleaded the decedent's contributory negligence and assumption of risk as affirmative defenses; on elementary principles, the burden was on it to sustain these pleas. Lake Shore, etc., Ry. v. Felton (C. C. A.) 103 F. 227, 230; McCoy v. Rhodes, 11 How. 131, 136, 13 L. Ed. 634; Jefferson Hotel Co. v. Warren (C. C. A.) 128 F. 565, 567; Inland, etc., Co. v. Tolson, 139 U. S. 551, 557, 558, 11 S. Ct. 653, 35 L. Ed. 270. Compare also Kanawha Co. v. Kerse, 239 U. S. 576, 580 et seq., 36 S. Ct. 174, 60 L. Ed. 448; Severn v. Philadelphia Co. (C. C. A.) 281 F. 784, 786; Jacobs v. Southern Ry. Co., 241 U. S. 229, 235, 36 S. Ct. 588, 60 L. Ed. 970; Seaboard Air Line v. Horton, 233 U. S. 492, 503, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; 45 USCA § 54 and cases cited. See also B. & O. R. R. v. Baugh, 149 U. S. 368, 13 S. Ct. 914, 37 L. Ed. 772; McPeck v. Cen. Vermont R. R. (C. C. A.) 79 F. 590, and cases cited; Hawkins v. Bleakley (D. C.) 220 F. 378, 381.

Finding no prejudicial error, the judgment below must be affirmed.

The judgment of the District Court is affirmed, with interest and costs.

WILSON, Circuit Judge (dissenting).

I cannot agree to the majority opinion that a Vermont contract of employment, both parties to which were domiciled in Vermont and accepted its Workmen's Compensation Act, will not be recognized as valid by this court, because it is against the public policy of New Hampshire where an injury occurred, on the ground that it undertakes to relieve an employer from liability for future negligence. The case is one of new impression, and, owing to the peculiar nature of the New Hampshire Employers' Liability and Compensation Act, is unique in the issues it presents, and of importance to employers, especially in adjoining states; otherwise I should not deem it necessary to present my views at length.

The only doubtful question, as I view the case, is the issue presented by the fact that the defendant had also accepted the New Hampshire Compensation Act, chapter 178, Pub. Laws 1926, and complied with section 4. It is not really contended, however, that this was done because of the fact that some of its workmen living and employed in Vermont were also sent into New Hampshire to do service work, as it also appears that, by reason of the extension of its lines into New Hampshire, it was at times, if not continually, obliged to employ residents of that state.

Unless the fact that the defendant invoked and defended under the New Hampshire Employers' Liability and Compensation Act, after the trial judge ruled that the Vermont contract would not be recognized in New Hampshire, must be construed as an assent that the New Hampshire statutes should alone govern the rights of the plaintiff's intestate in this case, the parties stand as though the Employers' Liability and Compensation Act of New Hampshire did not exist. The plaintiff brings its action under New Hampshire's Lord Campbell Act, and the defendant retains all its defenses at common law.

There was no new employment in New Hampshire of the deceased. There was no acceptance of the New Hampshire act by the deceased or his representative. By commencing an action under New Hampshire's death statute (Pub. Laws 1926, c. 302, §§ 9–14), his administratrix is by section 12 of its Compensation Act expressly barred from all benefits under the act.

If the defendant, by accepting the act, assented to the deceased, under the circumstances of this case, taking advantage of any benefits of compensation the act gives, did not the representative of the deceased by rejecting it and bringing her action under another statute consent to be subject to all defenses the act gives the defendant, and also to any defense the defendant had under the principles of comity?

The acceptance of the Compensation Act of New Hampshire does not confer on an employee injured in that state the right to sue at common law or on his representative in case of death to bring an action under its death statute; it merely does not take it away, unless it is voluntarily surrendered up by the acceptance of the Act after the injury. As the plaintiff saw fit to institute a suit under another New Hampshire statute, the acceptance of the New Hampshire Compensation Act by the defendant should not be construed as a waiver of any legitimate defense to the suit the defendant might have under the established rules of comity by virtue of a valid contract it had with the deceased.

However, I desire particularly to go on record as opposed to the ruling of the majority opinion that New Hampshire will not recognize a contract of employment under a Workmen's Compensation Act of another state that requires the assent of the workman before an injury to entitle him to its benefits, on the ground that it is contrary to the public policy of New Hampshire. The New Hampshire court has never so declared, and we cannot conceive of any court holding that a statute so generally held to be conceived in the interest of the workingman was inconsistent with the welfare of the citizens of New Hampshire. See Mulhall v. Mfg. Co., 80 N. H. 194, 115 A. 449.

The case of Saloshin, Adm'x, v. Houle, recently decided by the New Hampshire Supreme Court, does not so hold. That was a case where the injury occurred through the negligence of a third party in New Hampshire, and the deceased, a resident of New York, had accepted the New York Compensation Act (Consol. Laws c. 67), and his representative and widow was receiving compensation under it. She brought an action against the third party in New Hampshire.

By the provisions of the New York act, however, the claim of an employee against a third party, in case he accepts compensation, is assigned to the insurer, or the party paying the compensation. The insurer asked to be joined in the action in New Hampshire. There seems to have been some question as to whether the decedent had received or would receive, if allowed to prosecute the action for her own benefit, damages that might belong to other beneficiaries under the provisions of the New Hampshire death statute. The New Hampshire court merely held that, in an action in New Hampshire, a New York statute that differed from its own did not control as to damages. It is significant, however, so far as it has any bearing on the case now at bar, that the New Hampshire court, upon the principles of comity, did recognize the provision of the New York statute that assigned the employee's rights against the third party to the insurer and held the action was maintainable in the administratrix' name for the benefit of the insured, notwithstanding the right arose under a compensation act of another state, which leaves no option on the part of the employee to reject it after the injury occurred.

Whether a contract similar to that of Vermont would be valid if entered into in New Hampshire under its present statutes is not material, as appears from Smith v. Godfrey, infra, 28 N. H. 379, 61 Am. Dec. 617, and the cases hereinafter cited. It is conceded that it is a valid contract in Vermont, and by its terms the deceased agreed that his remedy under the Compensation Act of Vermont, in case of injury either in Vermont or New Hampshire, was an exclusive remedy.

It is true that contracts for relief against future negligence in this country are held void as against public policy; but a contract for adequate compensation in case of injury by accident, whether due to negligence of either employer or employee, or occurring without the negligence of either, is quite different from a contract under which an employee receives no benefit, but relieves the employer from all liability for future negligence. In the one case, it is held to be a contract in the interest of the workman, and, in the other, that it is so hostile to his interest and so conducive to neglect on the part of the employer to provide the ordinary provisions of safety for its employees, that it is, so far as we know, upheld by no court in this country.

The Massachusetts court, however, has repeatedly held that a contract exempting one party from liability from future negligence, if valid where made, as in England, though contrary to the public policy of Massachusetts and would be void if made there, is not immoral or illegal, and will be enforced in that commonwealth. Fonseca v. Cunard Steamship Line, 153 Mass. 553, 557, 27 N. E. 665, 12 L. R. A. 340, 25 Am. St. Rep. 660; O'Regan v. Cunard Steamship Line, 160 Mass. 356, 361, 35 N. E. 1070, 1071, 39 Am. St. Rep. 484; Stone v. Old Colony St. Railway, 212 Mass. 459, 464, 99 N. E. 218; Mittenthal v. Mascagni, 183 Mass. 19, 66 N. E. 425, 60 L. R. A. 812, 97 Am. St. Rep. 404. The word "illegal" is evidently here used in the sense of prohibited by express statute.

The limits of the concept "public policy," is not easily defined. Mr. Greenhood in his work on Public Policy gives this brief summary of the law, which is well supported by the authorities: "When a contract is valid under the public policy of the state where made, it will be enforced in another state, although the same would by the statute laws of the latter state be void, unless its enforcement would exhibit to the citizens of the state an example pernicious and detestable."

Again: "The law of one state having ex proprio vigore no validity in another state, the enforcement of a foreign contract which would not be valid by the law of the forum where its enforcement is judicially attempted, depends upon comity which is extended for that purpose, unless the agreement is contrary to the public policy of the state of the forum *in that it is contrary to good morals, or the state or its citizens would be injured by its enforcement* or it *perniciously* violates

positive written or unwritten prohibitory law." (Italics supplied.)

In other words, every contract, unless held to be contrary to good morals, and the welfare of its citizens, should be enforced in another state than the state of its inception, under the well-established principles of comity, even though prohibited by the law of the forum.

This rule is recognized in New Hampshire in Smith v. Godfrey, 28 N. H. 379, 61 Am. Dec. 617, the leading New Hampshire case, in which "A sold and delivered spirituous liquors to B in Massachusetts, and such sale was there legal. Upon an action brought for the price in New Hampshire, where such sales are illegal, it was held that the bare knowledge on the part of the vendor that the purchaser intended to sell them in New Hampshire contrary to law, was not a defence to the action and the plaintiff could recover the price." This case was followed in Hill v. Spear, 50 N. H. 253, 9 Am. Rep. 205; MacDonald v. Railway, 71 N. H. 448, 450, 52 A. 982, 59 L. R. A. 448, 93 Am. St. Rep. 550.

The court held further in Smith v. Godfrey, that, while no state or nation is bound to recognize or enforce any contracts which are injurious to its own interests or to those of its citizens, "it is a well established general principle that the validity of a contract is to be determined by the law of the place where the contract is made."

In Milliken v. Pratt, 125 Mass. 374, 375, 28 Am. Rep. 241, the Massachusetts court said: "The general rule is that the validity of a contract is to be determined by the law of the state in which it is made; if it is valid there, it is deemed valid everywhere, and will sustain an action in the courts of a state *whose laws do not permit such a contract.* Scudder v. Union National Bank, 91 U. S. 406 [23 L. Ed. 245]. Even a contract expressly prohibited by the statutes of the state in which the suit is brought, *if not in itself immoral,* is not necessarily nor usually deemed so invalid that the comity of the state, as administered by its courts, will refuse to entertain an action on such a contract made by one of its own citizens abroad in a state the laws of which permit it. Greenwood v. Curtis, 6 Mass. 358 [4 Am. Dec. 145]; McIntyre v. Parks, 3 Metc. 207." (Italics supplied.)

In O'Regan v. Cunard Steamship Line, supra, the same court said: "Although the stipulation relieving the defendant from lia-

bility for injuries resulting from the negligence of its servants is against the policy of our law, it is not immoral or illegal; and, it being valid in Great Britain, where it was made, it will be enforced on principles of comity by our courts."

The mere fact that statutes of different states, of the same general character, differ in some feature, does not render a contract entered into in one state and valid under its statute, unenforceable in another state because it does not conform to its statute. Swann v. Swann (C. C.) 21 F. 299, 306; Reynolds v. Day, 79 Wash. 499, 502, 140 P. 681, L. R. A. 1916A, 432; Herrick v. Minneapolis & St. L. R. Co., 31 Minn. 11, 16 N. W. 413, 47 Am. Rep. 771; Northern Pac. v. Babcock, 154 U. S. 190, 14 S. Ct. 978, 38 L. Ed. 958; Chicago & E. I. R. Co. v. Rouse, 178 Ill. 132, 52 N. E. 951, 44 L. R. A. 410; Higgins v. Central N. E. & W. R. Co., 155 Mass. 176, 180, 29 N. E. 534, 31 Am. St. Rep. 544; Dennick v. R. R. Co., 103 U. S. 11, 26 L. Ed. 439; Barnhart v. Am. Concrete Steel Co., 227 N. Y. 531, 125 N. E. 675; Schweitzer v. Hamburg-Amerikanische Line, 78 Misc. Rep. 448, 138 N. Y. S. 944; Howard v. Howard, 200 N. C. 574, 158 S. E. 101, decided April 1, 1931; Bliss v. Houghton, 16 N. H. 90, 91, 92; Adams v. Gay, 19 Vt. 358, 367; 2 Kent, 117, 118.

The cases cited by counsel for appellee of Am. Mut. Liability Co. v. McCaffrey et al. (C. C. A.) 37 F.(2d) 870, Johns-Manville Inc., v. Thrane, 80 Ind. App. 432, 141 N. E. 229, and Carl Hagenback & Wallace Show Co. v. Randall, 75 Ind. App. 417, 126 N. E. 501, have no bearing on this case. In the first two the employee was employed solely to do work in the state where the accident occurred, and it was held that he was subject to the Compensation Law of that state. In the last case the appellant was an Indiana corporation. The appellee was employed to work in any state. He made a contract in Ohio by which he agreed that, if injured, his rights were to be controlled by the laws of the District of Columbia. At the time of his injury he was being employed in Indiana, the domicile and place of business of the appellant, and the rights of the parties under these conditions were held to be governed by the law of Indiana.

Here the deceased was employed to work in Vermont where the domicile and main business of his company was, and incidentally in New Hampshire. In such case the rule has now become generally established to hold the employee subject to the law of the state where his employment was entered into. Pettiti v. Pardy Cons. Co., 103 Conn. 101, 109, 130 A. 70; Minto v. Hitchings, 204 App. Div. 661, 198 N. Y. S. 610; Schweitzer v. Hamburg-Amerikanische Line, supra; Norman v. Hartman Furniture Co., 84 Ind. App. 173, 150 N. E. 416.

I am firmly of the opinion that there is nothing in the contract entered into between these parties in Vermont that is contrary to the purpose of the New Hampshire Compensation Act as defined by the court of that state in Mulhall v. Nashua Mfg. Co., 80 N. H. 194, 115 A. 449, or inimical to the welfare of its citizens and the public policy of that state; and, according to the trend of decisions in other jurisdictions, the rights of the parties should have been held to be governed by the Vermont contract, which provided for the plaintiff's only and exclusive relief for the death of her intestate.

If the employee or his representative had also accepted the New Hampshire act and sought to enforce his rights under that act, the New Hampshire courts, in accordance with the most recent decisions, would have refused to award compensation under the New Hampshire act and referred her back to Vermont where his contract of employment was made. Pettiti v. Pardy Construction Co., 103 Conn. 101, 109, 130 A. 70; Minto v. Hitchings, 204 App. Div. 661, 198 N. Y. S. 610; Schweitzer v. Hamburg-Amerikanische Line, 78 Misc. Rep. 448, 138 N. Y. S. 944; Barnhart v. Am. Concrete Steel Co., 227 N. Y. 531, 125 N. E. 675; Norman v. Hartman Furniture Co., 84 Ind. App. 173, 150 N. E. 416.

Bradbury in the third edition of his work on Compensation Law, page 88, after reviewing the results of the administration of the law for two decades, says: "It would seem that the application of the doctrine that the parties should be governed by the Workmen's Compensation Law of the state where the contract of employment was made, would settle very many of the difficulties which are bound to arise, and any other doctrine would multiply these difficulties."

The recognition of the Vermont contract in this case does not interfere with the sovereign powers of New Hampshire, or extend the laws of Vermont into New Hampshire, any more than does the recognition and enforcement in New Hampshire of a contract entered into in another state and valid there, though not valid under the laws of New

Hampshire. See Smith v. Godfrey, supra; Hill v. Spear, supra.

Neither does the clause in a majority of the Compensation Acts in the different states expressly giving the law extraterritorial effect project the law of the enacting state into another state in defiance of its laws or its sovereignty. It merely provides that, in case of injury in another state, the state where the contract was entered into will allow compensation, though the accident occurred beyond its jurisdiction. In other words, the contract for compensation is as broad as the contract of employment.