NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

ELIZABETH M. ANDRES, PETITIONER, v. KEYSTONE VAR-
NISH COMPANY, THE STATE INSURANCE FUND, A
CORPORATION, RESPONDENT.

Decided January 3, 1941.

For the petitioner, *David Roskein*.

For the respondent, *Joseph Hockbaum*.

\*       \*       \*       \*       \*       \*    .    \*

From the testimony adduced and the stipulations of counsel, I find that the petitioner's decedent, Frederick Andres, was employed by the respondent, Keystone Varnish Company, a New York corporation, as a salesman, to work partly in New York and partly in New Jersey. While the contract of employment was entered into in the borough of Brooklyn and State of New York, it appears without contradiction that the employe's duties required him to perform a goodly part thereof in New Jersey. His work as a salesman contemplated the solicitation of customers in this state and thus obtain

orders for his employer. Petitioner's decedent was a resident of the State of New Jersey at the time of his death and in fact was engaged in calling on one of the respondent's customers in Elizabeth, New Jersey, when the accident, which resulted in his death, occurred. The respondent contends that the New Jersey Workmen's Compensation act does not apply. The law on this subject is well settled that, where a servant was employed in New York under a contract of employment that required the performance of work partly in that state and partly in New Jersey, and met with accidental injuries in New Jersey which resulted in his death, while engaged in the work he was employed to do in New Jersey, the right of his personal representative to recover compensation under the Workmen's Compensation act of New Jersey (*R. S.* 34:15-1 *et seq.*) is not affected by the fact that hiring or contract of employment was entered into in New York. *American Radiator Co.* v. *Rogge,* 86 *N. J. L.* 436; 92 *Atl. Rep.* 85. Our act makes no distinction between cases where the relationship of employer and employe is created by a contract made in New Jersey and a contract made in another state. Its language is general; it covers "every contract of hiring." In view of the foregoing and the fact that the petitioner, Elizabeth M. Andres, is a resident of the State of New Jersey, she is not precluded from maintaining this action, in the New Jersey Workmen's Compensation Bureau.

The next inquiry presented for determination, is: Did the decedent suffer an injury as a result of an accident arising out of and in the course of his employment with the respondent, and if so, did that injury contribute in any manner to his death.

The testimony is uncontradicted that on December 4th, 1939, the petitioner's decedent left his home in apparent good health and drove his automobile to the store of one of the respondent's customers in Elizabeth, New Jersey. The accidental occurrence took place as he parked his car in a driveway immediately adjoining the customer's premises. There is no doubt that the decedent in so doing was at a place, as was his automobile, where he had a legal right to be. The testimony of Samuel Koltzberg, a retail customer of the

respondent, on whom the deceased employe was making a business call is that at about seven-fifteen of the morning in question he heard a grating sound as if a car was scraping along the building which he occupied. Upon proceeding through the side entrance to the driveway he observed that the right rear wheel of the decedent's car was against the wall with the right front wheel very close to the wall and that the petitioner's decedent, Frederick Andres, was caught or pinned between the bumper and the wall and was leaning towards the automobile. The witness thereupon helped extricate the decedent from his precarious position and assisted him into the store. While so doing, the decedent gasped "Sam, the car got me." This testimony coupled with the photographs of the scene of the occurrence as well as those of the decedent's automobile which was involved, and an engineer's diagram of the locality, all of which were introduced in evidence, can lead to no other inference than that Andres, while attempting to prevent his automobile from rolling down the driveway which contained an eight-degree grade, into a busy thoroughfare, was caught and pinned between said automobile and the wall of the building. This untoward occurrence constituted an accident well under our cases and the injuries so received as a result of that accident, arose out of and in the course of the decedent's employment with the respondent, and I so find.

The employe, after resting in the customer's paint store was shortly thereafter removed to his home where he was put to bed. He complained of severe pains in his chest which radiated down his left arm and was found, by a physician who was called to attend him, to be pale and in a state of collapse. Significantly, this physician also found contusions and minor lacerations to the decedent's chest wall which, in the course of a few days, were changed to areas of discoloration. Morphine was administered by the doctor and electric pads were prescribed to be applied in an effort to relieve the condition. Thereafter the injured employe remained completely incapacitated and confined to his bed until the early morning of December 20th, 1939, when he collapsed and died.

I have no hesitancy in attributing the physical manifesta-

tions of the injury above described to the accident in question. Some point is made by the respondent that since the decedent was found pinned against the wall of the building with the running board of the automobile pressing against that area of his body at the height of the runningboard, *i. e.,* two and one-half to three feet from the ground, that no proof was adduced to establish that the injury to his chest was the result of this accident. From a consideration of all of the circumstances proven in this case and bearing in mind that the employe left his home that morning in an apparently normal condition, without any external manifestation of injury of any kind, that the accident as above described had occurred, which involved his being pinned against the brick wall of a building by said automobile and upon being removed to his home in a state of collapse, he is found to possess minor contusions and lacerations to his chest wall which developed into an area of discoloration within a few days, the reasonable inference is inescapable that during the course of the described accident, the decedent injured his chest. It is not encumbent upon the injured employe to carry the burden of proof to the point of demonstration. *Jackson* v. *New York Shipbuilding Corp.,* 119 *N. J. L.* 542; 197 *Atl. Rep.* 284. This burden is sustained if the evidence be such as to induce a reasonable man to draw the inference that the injury arose out of and in the course of the employment. Such a conclusion in the instant case is not based upon mere conjecture or surmise; it is supported by logical reasoning from established facts. The circumstances shown justifies inferences that bring this fundamental fact within the realm of probability. *Belyus* v. *Wilkinson Gaddis & Co.,* 115 *N. J. L.* 43; 178 *Atl. Rep.* 181; *affirmed,* 116 *N. J. L.* 92; 182 *Atl. Rep.* 873. Nor am I impressed with the respondent's contention that at the autopsy there was found no evidence of physical injury to the decedent's chest. It is to be borne in mind that at no time was it contended that the injury to the chest was serious. On the contrary, it was described as simple lacerations. It follows, that in the normal course of things, this condition should have and in all probability did clear up within the two weeks following the accident and prior to his demise.

In addition to the employe's attending physician, there testified on behalf of the petitioner Dr. Asher Yaguda, a pathologist, who was present at the time an autopsy was done of the decedent employe's body. Among other things found at said autopsy by Dr. Yaguda was a bread and butter pericarditis which was quite extensive and this suggested a contusion of the surface of the heart. It was his opinion that the direct trauma to the chest which the employe suffered on December 4th, 1939, resulted in a compression of the chest cage and the development of a coronary occlusion and the ensuing thrombosis which followed, which produced his death. His opinion in this respect was corroborated by the autopsy findings. He testified that he was of the opinion that there was a relationship between the trauma in question, the symptoms which followed thereafter, and the death of the petitioner's decedent. The medical evidence indicates that Andres did not possess a normal heart at the time of the accident, in that the blood vessels surrounding same were affected by some pre-existing condition. However, this underlying condition appeared to be non-disabling and did not impede his regular pursuit of his duties. The trauma to the chest wall and the exertion incident to this occurrence superimposed upon the underlying condition evidently was the causative factor of the symptoms which followed and accelerated the employe's death. An examination of the testimony of Dr. Gonzales, one of the experts produced by the respondent lends itself to this theory.

As has been indicated above, the burden of proof imposed upon the petitioner is to prove her case by a preponderance of the evidence and it is not a requisite that she establish a medical hypothesis to a point of certainty or demonstration. All that is necessary is that there be established a hypothesis which is reasonably probable. *Jackson* v. *New York Shipbuilding, supra.* From a consideration of all of the testimony adduced and the reasonable inferences to be drawn therefrom, I have reached the conclusion, and I so find, that the petitioner has sustained the burden of proof in establishing that the accident of December 4th, 1939, suffered by the petitioner's decedent, produced injuries and set in motion a chain of events which resulted in his death on the 20th day of December, 1939.

There is no question in the instant case that the petitioner, Elizabeth M. Andres, and her minor child, Elizabeth A. Andres, are total dependents of the deceased employe within the meaning of the statute and I so find.

The decedent was admittedly earning over $5,000 per year at the time of his death, thus entitling the petitioner to the compensation rate of $20 per week.

It is therefore, * * * ordered that judgment be entered in favor of the petitioner, Elizabeth M. Andres, and against the respondent, Keystone Varnish Company.

\*     \*     \*     \*     \*     \*     \*

HARRY S. MEDINETS,
*Deputy Commissioner.*